UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------×

WALTER ELAM,

                *Plaintiff*,

        *v.*

CONCOURSE VILLAGE, INC., ANTHONY JAMES, *individually*, and LETITIA BOWRY, *individually*,

                *Defendants.*

-------------------------------------------------------------------------×

**15 Civ. 7215**

**FIRST AMENDED COMPLAINT**

    Plaintiff Walter Elam, by counsel, The Harman Firm, LLP, alleges for his Complaint against Defendants Concourse Village, Inc., Anthony James, and Letitia Bowry as follows:

**PRELIMINARY STATEMENT**

    1.    Plaintiff Walter Elam ("Plaintiff" or "Mr. Elam") seeks damages and costs against Defendant Concourse Village, Inc. ("Concourse" or "Defendant Concourse"), Anthony James ("Mr. James" or "Defendant James"), and Letitia Bowry ("Ms. Bowry" or "Defendant Bowry") (hereinafter collectively referred to as "Defendants") for discriminating against Mr. Elam by: (i) illegally terminating his employment because of his association with a disabled person, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12117, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131; (ii) illegally terminating his employment in retaliation for complaining of disability discrimination, in violation of the ADA and NYCHRL; (iii) interfering with leave pursuant to the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611–2654; and (iv) retaliating against Plaintiff for using FMLA leave.

**JURISDICTION, VENUE AND ADMINISTRATIVE PREREQUISITES**

2. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendants' violated Plaintiff's rights under the ADA and FMLA.

3. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYCHRL as the NYCHRL claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York as a substantial part of the events giving rise to the claim occurred within this District.

5. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Opportunity in Employment Commission ("EEOC"). The EEOC issued a Notice of Right-to-Sue Letter August 31, 2015 related to the discriminatory acts described in the Complaint and this First Amended Complaint. This action was properly instituted within ninety (90) days of the issuance of the Right-to-Sue Letter.

**TRIAL BY JURY**

6. Plaintiff respectfully requests a trial before a jury.

**PARTIES**

7. Plaintiff Walter Elam, at all times relevant hereto, was and is a resident of New York County in the State of New York.

8. Upon information and belief, at all times relevant hereto, Defendant Concourse Village, Inc. was and is a domestic corporation organized under the laws of the State of New York with its headquarters located at 775 Concourse Village East, Bronx, New York, 10451.

9. Upon information and belief, at all times relevant hereto, Defendant Anthony James is an individual who was and is a resident of New York County in the State of New York.

10. Upon information and belief, at all times relevant hereto, Defendant Letitia Bowry is an individual who was and is a resident of Bronx County in the State of New York.

**STATEMENT OF FACTS**

11. In and around 2005, Plaintiff Walter Elam began his employment with Defendant Concourse as a Stock Room Supervisor.

12. Mr. Elam received excellent performance evaluations during his nearly ten-year employment with Concourse, along with merit-based salary raises, which included a salary increase for his "work ethic and contribution to cost efficiency" on or about September 15, 2014.

13. Prior to the start of Mr. Elam's employment with Concourse, his wife was involved in a car accident that left her partially paralyzed.

14. Mr. Elam, his wife's primary caregiver, assumed responsibility for his wife's health and safety, which includes regularly taking her to doctor's appointments, feeding, and bathing her.

15. Concourse was fully aware of Mr. Elam's wife's severely compromised medical condition—to wit, of his association with a person with a disability.

16. In and around June 2015, Concourse designated Defendant Anthony James to supervise Mr. Elam.

17. On or about June 22, 2015, because Mr. Elam took the morning off to take his wife to the doctor pursuant to Concourse's sick-leave policy, Defendant. James wrote up Mr.

Elam for being absent for his morning shift, despite the fact that Mr. Elam had complied with Concourse's sick-leave policy and procedure and did not violate any Concourse rule.

18. When Mr. Elam objected to the write up, Mr. James told Mr. Elam that he was not allowed to use sick days to care for his wife, despite that the Concourse-sick leave policy is clear in that employees may use their sick days to care for ill family members.

19. Mr. Elam complained to Concourse, which directed Mr. James to follow Concourse's sick leave policy and allow Mr. Elam to continue to use his sick leave to care for his wife.

20. After Mr. Elam's complaint, Mr. James began to harass Mr. Elam because of Mr. his wife's disability and his role as her primary caregiver, mandating that Mr. Elam follow fictitious policies that other employees were not required to follow and giving him specious write-ups for failing to complete impossible tasks.

21. For example, on or about Thursday, June 25, 2015, Mr. James required Mr. Elam to generate a weekly inventory list on a broken computer, fully aware that the computer did not work and that Mr. Elam would not be able to complete it.

22. Nonetheless, Mr. Elam attempted to create the inventory list, handwriting the list at home while off the clock.

23. On Friday, June 26, 2015, Mr. Elam delivered the list to Mr. James.

24. Mr. James refused to accept the list, stating that Mr. Elam "did not do the list correctly" because it was not typed. He told Mr. Elam to re-do the list.

25. Mr. Elam redid the list, delivering it to Mr. James on June 30, 2015.  However, Mr. James again rejected the list, claiming that it was due on Monday, June 29.  Consequently, Mr. James suspended Mr. Elam for three (3) days without pay.

26. Mr. James never directed Mr. Elam to type the list or instructed him on how to prepare the list while the computer was broken.

27. Mr. James never instructed Mr. Elam to deliver the list on June 29.

28. Mr. Elam complained to Christina Verney—a human resources representative at WinnCompanies, Concourse's human resources provider—of Mr. James' continuing, improper harassment based on his wife's disability, filing a harassment complaint against him.

29. Ms. Verney failed to correct Concourse's bad acts.

30. Further, the president of Concourse's board of directors, and Mr. James' sister-in-law, Defendant Letitia Bowry, supported Mr. James' harassment.

31. Defendant Bowry created false allegations against Mr. Elam as part of an ongoing campaign to have him terminated.

32. On June 26, 2015, Ms. Bowry sent Mr. Elam a memorandum, in which she falsely accused him of stealing time, stating that he punched in at 9 a.m. but came to work at 11 a.m.  This allegation patently was false, and Ms. Bowry easily could have verified that Mr. Elam did arrive at 9 a.m.; Concourse has cameras at the punch-in clock, which effortlessly could have confirmed that Mr. Elam arrived at work at 9 a.m.

33. In the same memorandum, Ms. Bowry also accused Mr. Elam of receiving write-ups for "disappearance."  This allegation patently was false, and Ms. Bowry easily could have

verified that Mr. Elam never received such a write-up; Ms. Bowry had access to Mr. Elam's personnel file and effortlessly could have verified that Mr. Elam never received such a write-up.

34. Even more disturbing, in the same memorandum, Ms. Bowry mocked Mr. Elam's wife's disability and his circumstances, sarcastically stating: "As a Supervisor, you said you cannot work at nights because you have a sick wife but somehow you were able to be on CV [Concourse] premises looking to find Mr. James in wrongdoings and putting letters under Shareholders' door. Who was looking after your wife, Mr. Elam? I pray she is well with you being at CV last night."

35. Ms. Bowry's mean spirited, accusatory, and caustic remarks illustrate the nature of Concourse's harassing conduct and discrimination against Mr. Elam.

36. On or around July 13, 2015, Mr. Elam received a letter from Ms. Bowry, stating that Concourse had terminated his employment for allegedly not performing his job effectively.

37. This reason was pure pretext; Mr. Elam satisfactorily had been performing his job responsibilities for nearly ten (10) years prior to his termination.

38. Concourse terminated Mr. Elam because of his association with a disabled individual and in retaliation for complaining of the illegal harassment he incurred after disclosing his responsibilities to his disabled wife.

39. Indeed, upon information and belief, Ms. Bowry did not even comply with the Bylaws of Concourse Village, Inc. (the "By-laws") when it terminated Mr. Elam.  The Concourse board should have voted on the issue of whether to terminate Mr. Elam.  Upon information and belief, Ms. Bowry knew that the board would not support her decision since Mr. Elam had done nothing wrong, so she wrongfully terminated him without board approval.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Illegal Termination of Employment in Violation of the ADA
### (Against Defendant Concourse)

40. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 39 with the same force as though separately alleged herein.

41. The ADA mandates that no employer discriminate against a qualified individual on the basis of their association with a disabled person in regard to the terms and conditions of his employment.

42. Defendant Concourse discriminated against Plaintiff due to his association with a disabled individual, to wit, Plaintiff's obligation to care for his disabled wife.

43. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

44. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

### SECOND CAUSE OF ACTION
### Illegal Retaliation in Violation of the ADA
### (Against Defendant Concourse)

45. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 44 with the same force as though separately alleged herein.

46. The ADA prohibits retaliatory adverse action against an employee for opposing discrimination.

47. Plaintiff opposed Defendant Concourse's harassment based on his wife's status as a disabled person.

48. Defendant Concourse retaliated against Plaintiff by, *inter alia*, arbitrarily and speciously writing him up, suspending him, unduly requiring him complete impossible tasks, and ultimately terminating him because of his complaints about the continuing discrimination.

49. As a direct and proximate consequence of Defendant's illegal retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

50. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

**THIRD CAUSE OF ACTION**
**Illegal Disability Discrimination in Violation of the NYCHRL**
**(Against All Defendants)**

51. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 50 with the same force as though separately alleged herein.

52. NYCHRL prohibits discrimination against a person because of the actual or perceived disability of a person with whom such person has a known relationship or association.

53. Defendants discriminated against Plaintiff by terminating his employment because of his association with a disabled individual, his wife.

54. As a direct and proximate consequence of Defendants' disability discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

55. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

## FOURTH CAUSE OF ACTION
### Illegal Retaliation in Violation of the NYCHRL
### (Against All Defendants)

56. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 55 with the same force as though separately alleged herein.

57. The NYCHRL prohibits retaliatory or discriminatory acts that are reasonably likely to deter a person from engaging in protected activity.

58. Plaintiff opposed Defendants' disability discrimination.

59. Defendants retaliated against Plaintiff by, *inter alia*, arbitrarily and speciously writing him up, unduly requiring him complete impossible tasks so that it could seemingly and disingenuously construe that he did not meet work matters, and ultimately terminating his employment because of his complaints about the continuing discrimination.

60. As a direct and proximate consequence of Defendants' illegal retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

61. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

## FIFTH CAUSE OF ACTION
### Interference with Leave in Violation of the FMLA
### (Against All Defendants)

62. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 61 with the same force as though separately alleged herein.

63. An employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period" in order to "care for …[a] spouse [with] a serious health condition." 29 U.S.C. § 2612(a)(1)(C).

64. Plaintiff requested FMLA leave to care for his wife, who suffers from a serious health condition.

65. Defendants attempted to prevent Plaintiff from using such leave.

66. Plaintiff was entitled to FMLA leave to care for his spouse. Defendants, by discouraging that leave, denying Plaintiff the leave mandated by the FMLA.

67. Therefore, Defendants interfered with Plaintiff's right to FMLA leave in violation of the FMLA.

68. As a result, Plaintiff is entitled to equitable relief, economic damages, liquidated damages, attorneys' fees and costs, and whatever other remedy the Court deems suitable.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of FMLA
### (Against All Defendants)

69. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

70. An employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period" in order to "care for …[a] spouse [with] a serious health condition." 29 U.S.C. § 2612(a)(1)(C).

71. Defendants granted Plaintiff FMLA leave to care for his wife, who suffers from a serious health condition.

72. Defendants, upon learning that Plaintiff used leave to care for his wife, launched a campaign against, ultimately resulting in Defendants terminating Plaintiff's employment.

73. Defendants' decision to terminate Plaintiff was based on his use of FMLA leave.

74. As a result, Plaintiff is entitled to equitable relief, economic damages, liquidated damages, attorneys' fees and costs, and whatever other remedy the Court deems suitable.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, actual damages to be determined at trial, but in no event less than $500,000;

B. For the second claim, actual damages to be determined at trial, but in no event less than $500,000;

C. For the third claim, actual damages to be determined at trial, but in no event less than $500,000;

D. For the fourth claim, actual damages to be determined at trial, but in no event less than $500,000;

E. For the fifth claim, actual damages to be determined at trial, but in no event less than $500,000;

F. For the sixth claim, actual damages to be determined at trial, but in no event less than $500,000;

G. An award of compensatory, assumed, and punitive damages;

H. Pre-judgment and post-judgment interest;

I. Attorneys' fees and costs; and

J. For such other and further relief as the Court deems just and proper.

[SIGNATURE ON THE FOLLOWING PAGE]

Dated:   New York, New York
         November 12, 2015

          THE HARMAN FIRM, LLP

       By:   s/ Walker G. Harman, Jr.
          Walker G. Harman, Jr. [WH-8044]
          Edgar M. Rivera [ER-1378]
          *Attorneys for Plaintiff*
          1776 Broadway, Suite 2030
          New York, NY 10019
          (212) 425-2600
          wharman@theharmanfirm.com
          erivera@theharmanfirm.com