1

```
 1
 2   UNITED STATES DISTRICT COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4   - - - - - - - - - - - - - - - - - - -x
 5   WALTER ELAM,
 6              Plaintiff,
 7              -against-                  15 Civ 7215
 8   CONCOURSE VILLAGE, INC., ANTHONY
     JAMES, INDIVIDUALLY, and LETITIA BOWRY,
 9   individually,
10              Defendants.
11   - - - - - - - - - - - - - - - - - - -x
12
13          DEPOSITION of CHRISTINA VERNEY, taken by
14   Plaintiff pursuant to Notice, held at the
15   offices of The Harman Firm, 220 Fifth Avenue,
16   New York, New York, on Monday, June 6, 2016,
17   commencing at 10:40 a.m., before Margaret M.
18   Harris, a Shorthand (Stenotype) Reporter and
19   Notary Public within and for the State of New
20   York.
21
22
23
24
25
```

2

```
 1
 2
 3      A P P E A R A N C E S:

 4            THE HARMAN FIRM
                    Attorneys for Plaintiff
 5                  220 Fifth Avenue
                    New York, New York  10001
 6
                BY:  EDGAR RIVERA, ESQ.
 7
 8
                CLIFTON BUDD & DEMARIA, LLP
 9                  Attorneys for Defendants
                    350 Fifth Avenue
10                  New York, New York  10118

11              BY:  CARLA B. GUNTHER, ESQ.

12

13      ALSO PRESENT:

14            Walter Elan

15
16
17
18
19
20
21
22
23
24
25
```

```
                                                            3
 1
 2                   IT IS HEREBY STIPULATED AND
 3          AGREED that the filing and sealing of
 4          the within deposition be, and the same
 5          are hereby waived;
 6                   IT IS FURTHER STIPULATED AND
 7          AGREED that all objections, except as
 8          to the form of the question, be and
 9          the same are hereby reserved to the
10          time of the trial;
11                   IT IS FURTHER STIPULATED AND
12          AGREED that the within deposition may
13          be sworn to before any Notary Public
14          with the same force and effect as if
15          sworn to before a Judge of this Court;
16                   IT IS FURTHER STIPULATED that
17          the transcript is to be certified by
18          the reporter.
19
20
21
22
23
24
25
```

```
                                                            25
 1                        Verney
 2         I'm going to tell you like a property manager, a
 3         maintenance technician, it might not be those
 4         exact titles though, along those lines.
 5                    They have a lot of different job
 6         titles than we have in our regular Winn
 7         Residential side.
 8              Q    What are you responsible for
 9         exactly as a human resources professional?
10              A    So, as an HR generalist I handle
11         any employee relation matters and I'll define
12         that such as, like I said, if anybody has an
13         issue to questions on their, you know, posting a
14         job to, you know, somebody's left there, at
15         their current property, so recruiting matters, I
16         handle, E-verify verifications for the
17         Department of Homeland Security, employee
18         relation matters, meaning if somebody has, you
19         name it, any type of issue that you would
20         normally go to human resources, you could call
21         either me or my fellow generalist to kind of
22         walk through the problem and figure out a
23         solution.
24              Q    And do you manage this at Winn
25         itself or Winn's properties?
```

MCM REPORTING SERVICE
(516) 775-5209

```
                                                        40
1                          Verney
2      FMLA.
3           A     Uh-hum.
4           Q     Did you have any training
5      sessions from Winn?
6           A     No.
7           Q     Did they ever disseminate
8      paperwork or documents about the FMLA?
9           A     As an employee, everybody, you
10     know, you get a training FMLA.
11          Q     Is there one training, more
12     trainings?
13          A     I don't know.
14          Q     Did you participate in a
15     training?
16          A     Yes.
17          Q     Do you remember if you
18     participated for more than one?
19          A     I believe I have only taken like
20     one training for FMLA.
21          Q     Do you remember approximately
22     when that was?
23          A     They just updated, so probably a
24     couple of months ago, but to learn it as a
25     perspective for like HR, not for myself
```

```
                                                            67
1                        Verney
2    benefits based on a health issue?
3             A      Right.
4             Q      Were any employees from
5    Concourse?
6             A      No.
7             Q      And Concourse is unique in the
8    sense that it doesn't follow Winn's --
9             A      Benefits.
10            Q      Yeah, that it doesn't follow
11   Winn's manual?
12            A      Correct.
13            Q      So do you know how would an
14   employee at Concourse find out about FMLA?
15            A      So right now it would go to
16   Sharon Seidenberg.
17            Q      Is that a new policy?
18            A      Recently, I believe.
19            Q      How recent is recent?
20            A      I'm not sure.
21            Q      Is it over a year old?
22            A      I don't know.
23            Q      Is it over five years old?
24            A      I don't want to give you dates
25   because I'm not sure of when that changed.
```

```
                                                          74
1                            Verney
2                this.
3          A     Thank you.
4                      (A document Bates stamped
5                D000188 and D000189 was marked as
6                Plaintiff's Verney Exhibit 4 for
7                identification, as of this date.)
8     BY MR. RIVERA:
9          Q     I'm passing the witness a
10    two-page document labeled Verney 4 (handing).
11         A     Thank you.
12         Q     Do you recognize this exhibit?
13         A     (Perusing document.)  Yes, my
14    notes.
15         Q     What are these notes of?
16         A     When Walter called to explain
17    that he was having some problems with his
18    manager.
19         Q     So I want to give you an
20    opportunity to read through them and just tell
21    me when you're ready.
22         A     (Perusing document.)  Yup.
23         Q     So on the top of Page 2, it's
24    Bates numbered D000189.
25         A     Yup.
```

```
                                                            90
 1                            Verney
 2             A     Sure.
 3             Q     And then if you go to the page
 4     D000982?
 5             A     (Perusing document.)
 6             Q     Can you read the top to yourself,
 7     please?
 8             A     (Perusing document.)
 9             Q     And then if we move to D000984,
10     on the top it says, "Findings and
11     Recommendations."
12                   Can you please read that entire
13     page?
14             A     (Perusing document.)  Okay.
15             Q     Is what's described in Verney 7
16     consistent with what Elam told you and then you
17     memorialized in your notes in July 2015?
18             A     Yes.  All he said is just his
19     wife is handicapped and got into an accident.
20                   He was trying to explain why he
21     had to be late for work that day or called in
22     but ended up going to work is what he said.
23             Q     Okay.
24             A     But he didn't go into any sort of
25     details like this.
```

```
                                                              107
 1                          Verney
 2           A      I don't recall discussing that
 3    either.
 4           Q      If an employee is missing work
 5    because of a spouse's health condition, is that
 6    something that you think you should bring to
 7    benefits?
 8           A      In general or in regard to this?
 9           Q      In general.
10           A      It depends on the situation.
11    Each situation is different.
12           Q      What would you want to know?
13           A      Can you explain?
14           Q      I'll rephrase, yeah.
15                  What information would you want
16    to know in order to determine whether to bring
17    it to benefits?
18           A      If they need to like stop working
19    altogether or it's becoming severe that they
20    need to stop working, I would say, "You should
21    speak to benefits if you need to go out on a
22    leave."
23           Q      What do you mean by "stop
24    working"?
25           A      That they can't go to work any
```

111

1      Verney
2  to see how much work they are missing and
3  usually it would come from a manager saying,
4  "They are late, they are not coming in to work,
5  it's every week," you know, "It's twice a week,"
6  we need to figure out, you know, figure out next
7  steps on this.
8           Q     So if you had learned that there
9  was an ongoing issue --
10          A     Correct.
11          Q     -- with an employee not being on
12 the premises --
13          A     Right, ongoing.
14          Q     -- because of a health issue --
15          A     Correct.
16          Q     -- then you would probably bring
17 it up?
18          A     Correct.
19          Q     In the summer of 2015, in July
20 when this was happening, did you understand the
21 FMLA to include taking care of a spouse?
22                MS. GUNTHER:  Objection.
23          A     About what FMLA meant?
24          Q     Yes.
25                That you can use FMLA leave for

MCM REPORTING SERVICE
(516) 775-5209