**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
WALTER ELAM,

                *Plaintiff,*                  **15 CV 7215**

     *v.*

CONCOURSE VILLAGE, INC., ANTHONY
JAMES, *individually, and* LETITIA BOWRY,
*individually,*

                *Defendants.*
----------------------------------------------------------X

---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

THE HARMAN FIRM, LLP

**THE HARMAN FIRM, LLP**
Walker G. Harman, Jr.
Edgar M. Rivera
220 Fifth Avenue, Suite 900
New York, New York 10001
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT ............................................................................................................ 8

  I.   STANDARD FOR DENYING SUMMARY JUDGMENT ............................. 8

  II.   ELAM STATES A PRIMA FACIE CASE FOR ASSOCIATION
DISCRIMINATION UNDER THE ADA AND THE NYCHRL ......................... 9

     A.   Under McDonnell-Douglas, Elam has shown that his termination was motivated by
associational disability. ...................................................................................... 10

     B.   Elam states a claim for associational disability discrimination under the NYCHRL. . 14

  III.   DEFENDANTS' ARTICULATED REASON FOR ELAM'S TERMINATION IS
PRETEXT ............................................................................................................ 14

  IV.   ELAM'S RETALIATION CLAIMS SHOULD NOT BE DISMISSED ................. 16

     A.   Elam's retaliation claim under the ADA should not be dismissed. ............................ 17

     B.   Elam's retaliation claim under the NYCHRL should not be dismissed...................... 18

  V.   ELAM'S CLAIMS AGAINST BOWRY AND JAMES SHOULD NOT BE
DISMISSED ........................................................................................................ 18

  VI.   ELAM'S FMLA CLAIMS SHOULD NOT BE DISMISSED ................................. 19

     A.   Elam's interference claim should not be dismissed. .................................................. 19

     B.   Elam's FMLA retaliation claim should not be dismissed because the FMLA prohibits
retaliation for an employee's invocation of right to take leave............................................ 22

     C.   Elam's FMLA claims against the individual Defendants should not be dismissed..... 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S. H. Kress & Co.*
  398 U.S. 144 (1970) ............................................................................................. 9

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ............................................................................................. 9

*Barnett v. Revere Smelting & Ref. Corp.*
  67 F. Supp. 378 (S.D.N.Y. 1999) ....................................................................... 21

*Bennett v. Health Mgmt. Sys., Inc.*
  92 A. D. 3d 29 (1st Dep't App. Div. 2011) ......................................................... 14

*Burlington N. & Santa Fe Ry. Co. v. White*
  548 U.S. 53 (2006) ............................................................................................. 17

*Carlton v. Mystic Transp., Inc.*
  202 F.3d 129 (2d Cir. 2000) ................................................................................. 9

*Casseus v. Verizon New York*
  722 F. Supp. 2d 326 (E.D.N.Y. 2010) ............................................................... 19

*Chukwurah v. Stop & Shop Supermarket Co.*
  354 Fed. Appx. 492 (2d Cir. 2009) ..................................................................... 11

*Danzer v. Norden Sys., Inc.*
  151 F.3d 50 (2d Cir. 1998) ................................................................................... 9

*Darcy v. City of New York*
  No. 06-CV-2246, 2011 WL 841375 (E.D.N.Y. Mar. 8, 2011) ...................... 13, 15

*Dessources v. American Conference Institute*
  No. 12 CIV. 8105, 2013 WL 2099251 (S.D.N.Y. May 15, 2013) ..................... 23

*Erdman v. Nationwide Ins. Co.*
  582 F.3d 500 (3d Cir. 2009) ............................................................................... 23

*Fields v. N.Y. State Office of Mental Retardation and Developmental Disabilities*
  115 F.3d 116 (2d Cir. 1997) ............................................................................... 15

*Fitzgerald v. Shore Memorial Hospital*
  92 F. Supp. 3d 214 (D.N.J. 2015) ................................................................. 16, 21

*Grant v. Roche Diagnostics Corp.*
  No. 09-CV-1540,  2011 WL 3040913 (E.D.N.Y. July 20, 2011) ..................... 11

*Graziadio v. Culinary Inst. of Am.*
  817 F.3d 415 (2d Cir. 2016) ......................................................................... passim

*Gregory v. Daly*
  243 F.3d 687 (2d Cir. 2001) ............................................................................... 11

*Hahn v. Office & Professional Employees Int'l Union, Local 153*
  13-CV-946, 2016 WL 4120517 (S.D.N.Y. July 22, 2016) ............................... 23

*Kinsella v. Rumsfeld*
  320 F.3d 309 (2d Cir. 2003) ............................................................................... 15

*Larimer v. International Business Machines Corp.*
  370 F.3d 698 (7th Cir. 2004) ............................................................................. 12

*LeClair v. Berkshire Union Free Sch.*
  No. 08-CV-01354, 2010 U.S. Dist. Lexis 114835 (N.D.N.Y. October 28, 2010) ................... 20

*Lewis v. Blackman Plumbing Supply L.L.C.*
    51 F. Supp. 3d 289 (S.D.N.Y. 2014) ............................................................... 15
*Lucente v. Int'l Bus. Machs. Corp.*
    310 F.3d 243 (2d Cir. 2002) ....................................................................... 8, 9
*Malena v. Victori's Secret Direct, LLC*
    886 F. Supp. 2d 349 (S.D.N.Y. 2012) ............................................................ 18
*Manuel v. Westlake Polymers Corp.*
    66 F. 3d 758 (5th Cir. 1995) ....................................................................... 21
*Marchioli v. Garland Co., Inc.*
    No. 11-CV-124, 2011 WL 1983350 (N.D.N.Y May 20, 2011) ............................. 23
*Mattera v. JPMorgan Chase Corp.*
    740 F. Supp. 2d 561 (S.D.N.Y. 2010) ............................................................ 11
*McFarlane v. Chao*
    No. 04-CV-4871, 2007 WL 1017604 (S.D.N.Y. Mar. 30, 2007) ......................... 8, 9
*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*
    715 F.3d 102 (2d Cir. 2013) ....................................................................... 14
*Mora v. Chem-Tronics Inc.*
    16 F. Supp. 2d 1192 (S.D. Cal. 1998) ............................................................ 21
*Moscarello v. Malcom Pirnie, Inc.*
    2008 WL 6192101 (S.D.N.Y. Feb. 17, 2008) .................................................. 10
*Olson v. New York*
    315 F. App'x 361 (2d Cir. 2009) .................................................................. 15
*Price v. City of Fort Wayne*
    117 F.3d 1022 (7th Cir. 1997) .................................................................... 21
*Robinson v. Concentra Health Servs., Inc.*
    781 F.3d 42 (2d Cir. 2015) ......................................................................... 10
*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*
    183 F. 3d 155 (2d Cir. 1999) ................................................................... 17, 20
*Simmons v. Akin Gump Strauss Hauer & Feld, LLP*
    508 F. App'x 10 (2d Cir. 2013) ................................................................... 14
*Slattery v. Swiss Reins. Am. Corp.*
    248 F.3d 87 (2d Cir. 2001) ......................................................................... 11
*Smith v. Westchester Cnty.*
    769 F. Supp. 2d 448 (S.D.N.Y. 2011) ............................................................ 19
*Tolbert v. Smith*
    790 F.3d 427 (2d Cir. 2015) ....................................................................... 13
*Tse v. New York Univ.*
    2013 WL 5288848 (S.D.N.Y. 2013) ............................................................. 17
*Univ. of Texas Sw. Med. Ctr. v. Nassar*
    133 S. Ct. 2517 (2013) .............................................................................. 17
*Wahl v. Cty. of Suffolk*
    466 F. App'x 17 (2d Cir. 2012) ................................................................ 23, 24
*Weiss v. JPMorgan Chase & Co.*
    332 Fed Appx 659 (2d Cir. 2009) ................................................................ 16
*Young v. U.S. Dept. of Homeland Sec.*
    No. 10-CV-9571, 2011 WL 6057849 (S.D.N.Y Dec. 5, 2011) ............................. 23

*Zahorik v. Cornell Univ.*
  729 F2d 85 (2d. Cir 1984) ........................................................................ 15
*Zann Kwan v. Andalex Group LLC*
  737 F.3d 834 (2d Cir. 2013) ...................................................................... 16
*Zawadowicz v. CVS Corp.*
  99 F. Supp. 2d 518 (D.N.J. 2000) .............................................................. 21

**Statutes**
29 U.S.C. § 203 ............................................................................................ 24
29 U.S.C. § 2611 .......................................................................................... 24
29 U.S.C. §§ 2612 ........................................................................................ 19
42 U.S.C § 12112 ......................................................................................... 12

**Regulations**
29 C.F.R. § 825 ......................................................................... 19, 20, 21, 24

## PRELIMINARY STATEMENT

Plaintiff Walter Elam ("Plaintiff" or "Elam") respectfully submits this Memorandum of Law in opposition to the Motion for Summary Judgment submitted by Defendants Concourse Village, Inc. ("Concourse"), Anthony James, and Letitia Bowry (collectively, "Defendants").

The record is clear: genuine issues of material fact ("Material Facts")[1] remain in dispute. Not only do Plaintiff's and Defendants' witnesses fundamentally disagree about the Material Facts, but *Defendants' own witnesses* dispute Material Facts, making summary judgment all but impossible.  Material Facts in dispute include such critical issues as: who supervised Plaintiff; the actual reason for Plaintiff's termination; whether associational disability or retaliation were motivating factors; whether notice of a serious health condition was provided; whether proper disciplinary procedure was followed; whether Defendants had knowledge of Plaintiff's wife's serious health condition; and whether Defendants made anti-disability statements.

It is Defendants' burden to show a legitimate, non-discriminatory reason for termination. First, Plaintiff's termination and the discipline he received allegedly in support of his termination are rife with procedural irregularities or simply did not occur.  Second, Defendants' stated reasons for terminating Plaintiff— that he "failed to maintain the stockroom to CVI's standards" and "insubordination" —are contradicted by their own witnesses and have changed since his separation.  Third, Plaintiff had performed his job without any write-ups for nearly ten years; however, he was terminated within two months of James' learning of his wife's disability and his complaints of associational disability discrimination.  These are textbook examples of pretext.

---

[1] By Material Facts, Plaintiff is referring only to those facts that go directly to a claim or defense in this action, specifically as they relate to the *McDonnell-Douglas* burden-shifting analysis.

Since not even the insurmountable issue of the basis for termination can be resolved, much less issues such as decision-making, notice, procedure, and bias, summary judgment must be denied.

## **STATEMENT OF FACTS**

Concourse owns a residential apartment complex in the Bronx, New York. Concourse is run by a Board of Directors (the "Board") composed of Concourse shareholders. (Bowry Dep. 31:7-23.) Defendant Bowry was the Board's President in 2015. (Bowry Dep. 28:5-11, 31:2-4.) Winn Residential, LLC ("Winn") was Concourse's property management agent between 2012 and 2016. (Verney Dep. 22:19-23; Bowry Dep. 54:2-8.)

Concourse hired Elam as a Stockroom Supervisor in late 2005. (Elam Decl. ¶ 3; Elam Dep. 46:10-12.) As Stockroom Supervisor, Elam's job responsibilities included ordering, maintaining, and disbursing supplies. (Ex. P and Q, Harman Decl.; Elam Decl. ¶ 4; Elam Dep. 49:16-21.) Throughout his ten (10) years of employment at Concourse, Elam received positive performance evaluations and merit-based salary raises. (Elam Decl. ¶ 5; Ex. A and B, Elam Decl.) For example, on September 8, 2014, Elam received a positive performance review, which explicitly praised his performance in several areas, including "Planning and Organizing," "Communication," and "Analytical Thinking." (Ex. R, Harman Decl.) On September 15, 2014, Sherill Henry, the Board's Secretary, notified Elam that Concourse would raise his salary in light of his "work ethic and contribution to cost efficiency," and in September 2014, Elam received a merit-based raise. (Ex. C, Elam Decl.; Elam Dep. 127:6-11.)

In June 2011, Elam's wife was severely injured in a car accident. (Elam Decl. ¶ 6; Elam Dep. 258:14-24.) As a result of this accident and a subsequent stroke, she has a number of serious physical disabilities: brain damage, speech impairment, and partial paralysis. (Elam Decl. ¶ 7; Ex. D, Elam Decl.; Elam Dep. 259:3-10.) Due to her partial paralysis, she uses a

wheelchair and is barely able to walk.  (Elam Decl. ¶ 8; Elam Dep. 259:11-14.)  Elam is his

wife's primary caregiver, which responsibilities include regularly taking her to doctor's

appointments and feeding and bathing her.  (Elam Decl. ¶ 9.)   During Elam's employment at

Concourse, he hired an aide to care for his wife during the day while he was at work.  (Elam

Decl. ¶ 10; Elam Dep. 261:11-23.)  Elam's coworkers and supervisor at Concourse knew of his

wife's disability; the Board members were aware of her disability, as were employees with

whom Elam interacted at Winn.  (Elam Decl. ¶ 18; Elam Dep. 262:9-13.)

Elam requested time off to care for his wife shortly after her accident in 2011.  (Elam

Decl. ¶ 11; Elam Dep. 278:2-14.)  Elam spoke to a Concourse manager, known to Elam only as

"Desi," who was an employee at PRC, the property management company with whom

Concourse was contracting at the time.  (Elam Decl. ¶ 12.)  Desi told Elam that he was not

permitted to take the requested extended leave because Concourse "needed [him]"; however, she

stated that if Elam needed to take shorter periods of time off work to take care of his wife, he

could use sick days to cover his absences.  (Elam Decl. ¶ 12; Elam Dep. 278:2-14.)  At no

point—from then through his termination—was Elam notified of the availability of FMLA leave.

(Elam Decl. ¶ 14; James Dep. 115:3-5; Verney Dep. 112:20-25; Henry Dep. 120:5-8; Elam Dep.

276:21–277:2.)  Nor were any posters displayed at Concourse notifying employees of their rights

under the FMLA.  (Elam Decl. ¶ 15; Bowry Dep. 66:21–67:8.)

On April 20, 2015, Concourse hired Anthony James as a Lead Supervisor.  (Elam Decl. ¶

17; James Dep. 21:6-9.)  In June 2015, James proposed changing the shift schedules for

supervisors, such that each of the four (4) supervisors at Concourse would stay at the Concourse

late, until approximately 9:00 p.m., one night per week.  (Elam Decl. ¶ 19; James Dep. 108:6-20,

151:14-23.)  On June 11, 2015, James asked Elam to work a night shift.  (Elam Decl. ¶ 20; Elam

Dep. 221:23-24, 222:2-4.)  In response, Elam informed James that he was unable to work in the evenings, as he needed to care for his disabled wife.  (Elam Decl. ¶ 21; James Dep. 109:10-17; Elam Dep. 222:4-6.)  James was resistant to Elam's request and trivialized his need to care for his disabled wife, telling him, "This is a place of business…things don't work around your wife because she's handicapped."  (Elam Decl. ¶ 23; Elam Dep. 222:2-11, 222:18-19.)  Elam responded that Concourse was aware of his wife's disability and of his need for related accommodations, yet James responded, "Well, I'm in charge now."  (Elam Decl. ¶ 24; Elam Dep. 222:12-14.)  James attempted to force Elam to work an evening shift, despite his request for an accommodation.  (Elam Dep. 223:13.)  However, Elam went to Henry's office and spoke to her in person, believing he was opposing discrimination, where he reminded her of his situation as it pertained to his wife.  (Elam Decl. ¶ 26; Elam Dep. 223:14.)  Henry told Elam that James did not have the authority to force him to work evening shifts.  (Elam Decl. ¶ 26; Elam Dep. 223:14.)  After Elam spoke with Henry, she called James into her office for a private meeting while Elam waited outside.  (Elam Decl. ¶ 27.)  After this meeting, Elam saw James leave, looking upset.  (Elam Decl. ¶ 28.)  Henry then told Elam that he would continue working the hours he had been working and that she had spoken to James about the matter.  (Elam Decl. ¶ 29.)  After this incident, however, James began to target and discriminate against Elam because of his wife's disability.  (Elam Decl. ¶ 30; Elam Dep. 224:9-11, 275:2-12.)

On June 22, 2015, Elam learned that he would have to take his wife to her doctor's appointment that morning, as her usual aide had unexpectedly failed to come in.  (Elam Decl. ¶ 31; Ex. E, Elam Decl.; Elam Dep. 150:21-24.)  As such, Elam took the morning off work to take his wife to her appointment.  (Elam Decl. ¶ 32; Elam Dep. 147:2-12, 150:3-7.)  Pursuant to Concourse's sick time policy, Elam called Concourse's dispatcher to inform Concourse that he

would be taking a sick day in order to take his wife to her doctor's appointment.  (Elam Decl. ¶ 33; Elam Dep. 147:5-7; James Dep. 106:22–107:3.)  In addition, Elam called his assistant, Lillian Somersle, to inform her of his absence and instructed her to also notify James as a courtesy.  (Elam Decl. ¶ 34; Elam Dep. 147:8-12.)  At the time, Elam did not have James' email address or phone number and so was unable to notify James himself.  (Elam Decl. ¶ 35; Elam Dep. 148:17-19, 149:13-14.)

Later that same day, at around 3:00 p.m., James wrote Elam up for being absent for his morning shift, despite the fact that Elam had complied with Concourse's sick-leave policy and procedure and did not violate any Concourse rule.  (Ex. F and H, Elam Decl.; Elam Decl. ¶ 37; James Dep. 99:4-8.)  Moreover, prior to the June 22, 2015 write-up, James had never instructed Elam to contact him if he was going to be absent.  (Elam Decl. ¶ 38; Elam Dep. 146:10-12.)  The following day, June 23, 2015, James verbally disciplined Elam for taking time off on June 22, 2015 to care for his wife.  (Elam Decl. ¶ 40; Elam Dep. 227:18-23.)  James told Elam that he was not allowed to use sick days to care for his wife.  (Elam Decl. ¶ 41; Elam Dep. 225:24–226:2, 228:2-5.)  Concourse's sick time policy allows employees to take sick days to care for family members.  (Elam Decl. ¶ 42; Ex. G, Elam Decl.; Henry Dep. 104:4–9).  Concourse had explicitly told Elam of this policy when he began working at Concourse.  (Elam Decl. ¶ 42; Elam Dep. 264:3-8.)  When Elam objected to James' statement that he was not allowed to use sick days to care for his disabled wife, however, James responded in a hostile manner, telling Elam that he "didn't care" that Elam's wife was disabled.  (Elam Decl. ¶ 43; Elam Dep. 221:3-9, 268:8-13.)  Nevertheless, after this point, Elam did not take any more sick days to care for his disabled wife, even though he needed to go home to care for her on multiple occasions, as he was afraid that

doing so would provoke James to harass and retaliate against him further.  (Elam Decl. ¶ 46–47; James Dep. 119:19-23.)

After these events, James' targeting and harassment of Elam intensified.  (Elam Decl. ¶ 49; Elam Dep. 221:3-9, 269:6-12, 275:2-12.)  On Thursday, June 25, 2015, James required Elam to prepare an inventory list by the next day without instruction as to the contents of the list.  (Ex. I, Elam Decl.; Elam Decl. ¶ 50, 52; James Dep. 125:23-126:8.)  That evening, Elam's computer stopped working, and Elam contacted Henry to request that it be fixed; he was told that it would be fixed the following day, Friday, June 26, 2015.  (Elam Decl. ¶ 53–56; Elam Dep. 175:18-22, 177:24–178:2.)  However, despite Elam's request, the computer was not fixed on Friday.  (Elam Decl. ¶ 57; Elam Dep. 175:23.)  Nonetheless, Elam did inventory to the best of his ability, handwriting the list.  (Elam Decl. ¶ 58; Elam Dep. 176:3-5.)  On that same day, Friday, June 26, 2015, Elam provided James with the list he had requested.  (Elam Decl. ¶ 59; Elam Dep. 178:20–179:2.)

On Monday, June 29, 2015, James told Elam that he "did not do the list correctly" because it was not typed and told Elam to re-do the list.  (Ex. J, Elam Decl.; Elam Decl. ¶ 60–61; James Dep. 125:20-22.)  Elam wrote James a letter explaining that he had handwritten the list only because he had not had access to a computer and redid the list, delivering it to James on June 30, 2015.  (Ex. K, Elam Decl.; Elam Decl. ¶ 62.)  However, James again rejected the list, claiming—for the first time—that it was due on June 29, 2015.  (Elam Decl. ¶ 63.)  James then suspended Elam for three (3) days without pay, purportedly for failing to comply with James' request to give details of the stock room.  (Ex. L, Elam Decl.; Elam Decl. ¶ 65.)  This suspension was over Winn's objection, who did not believe that Elam's conduct was so "egregious" as to warrant an unpaid suspension.  (Henry Dep. 129:19–24; Verney Dep. 82:17-20.)

On or about July 1, 2015, Elam sent a letter to Board members, requesting a meeting to discuss James' ongoing harassment. (Elam Decl. ¶ 66.) On or about July 2, 2015, Elam complained to Christina Verney, an HR coordinator at Winn, about James' continuing, improper harassment based on his wife's disability, filing a harassment complaint against him. (Ex. S, Harman Decl.; Elam Decl. ¶ 68; Elam Dep. 242:7-12; Verney Dep. 8:18-21, 98:3-8.) Verney told Elam that James was not authorized to take disciplinary action against him, that he would receive pay for the days he had been suspended, and that the disciplinary action form would be removed from his personnel file. (Elam Decl. ¶ 69; Elam Dep. 244:15-25.) Verney also met with Henry and Lorraine Witunski, Ms. Verney's supervisor at Winn, and recommended that Henry meet with James and Elam to discuss the situation. (Verney Dep. 101:16-21.) However, this meeting never occurred. (Elam Decl. ¶ 76.)

On July 6, 2015, Elam returned to work. (Elam Decl. ¶ 70; Elam Dep. 245:2-4.) Around this time, Elam learned that there was a letter circulating among Board members from Bowry about him. (Elam Decl. ¶ 71.) Elam asked Constance Walker Hendricks, a Board member, about the letter; she gave him a copy of it. (Ex. M, Elam Decl.; Elam Decl. ¶ 71.) In this letter, Bowry mocked Elam's wife's disability and Elam's circumstances, sarcastically stating:

> As a Supervisor, you said you cannot work at nights because you have a sick wife but somehow you were able to be on CV [Concourse] premises looking to find Mr. James in wrongdoings and putting letters under Shareholders' door. Who was looking after your wife, Mr. Elam? I pray she is well with you being at CV last night."

Ex. M, Elam Decl.

On July 9, 2015, the Board held a meeting, which Elam attended, intending to complain about James' ongoing harassment and discrimination; however, Elam was told that the Board did not have time to hear his concerns. (Elam Decl. ¶ 73–74; Elam Dep. 249:13-18.) Leroy Meyers,

a Board member, told Elam that Bowry was trying to get Elam fired during the meeting. (Elam Decl. ¶ 75; Elam Dep. 276:2-5.) Meyers also told Elam that that the Board members told Bowry that she could not fire Elam; instead, the Board instructed Bowry to have a meeting between James and Elam to address the issues. (Elam Decl. ¶ 75.)

On July 13, 2015, the management office called Elam saying that Henry wanted to speak with Elam; Elam called Meyers and informed him of the meeting. (Elam Decl. ¶ 77.) Bowry, James, Meyers, two other Board members—Michael Chavis and Frances Stanley—and Elam were present. (Elam Decl. ¶ 78; Elam Dep. 251:4-6, 18.) In this meeting, Bowry handed Elam a termination letter and informed him that Concourse was terminating his employment. (Elam Decl. ¶ 79; Elam Dep. 251:12-15.) The termination letter stated that Elam was terminated because "Maintenance Unit/Restorative Unit Staff has requested material from [Elam] to complete their job and [Elam] was unable to do so." (Ex. N, Elam Decl.) Meyers repeatedly protested that Bowry did not have the authority to terminate Elam, as the Board had not agreed to terminate him, but to no avail. (Ex. O, Harman Decl.; Elam Decl. ¶ 80; Elam Dep. 251:19-25.) Elam was not provided with notice that he was purportedly not adequately performing his job responsibilities prior to his termination. (Elam Decl. ¶ 81; James Dep. 123:21-24.)

## ARGUMENT

### I. STANDARD FOR DENYING SUMMARY JUDGMENT

At the summary judgment stage, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *McFarlane v. Chao*, No. 04CV4871(GBD)(HBP), 2007 WL 1017604, at *9 (S.D.N.Y. Mar. 30, 2007) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253-54 (2d Cir. 2002)). In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor

of, the non-movant. *Id.* Stated more succinctly, "the evidence of the non-movant is to be believed." *Id.* Summary judgment is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact. *Id.*, at *9.

Summary judgment is "ordinarily inappropriate" in employment discrimination cases where the employer's intent and state of mind are in dispute. *McFarlane*, 2007 WL 1017604, at *9 (citing *Carlton v. Mystic Transp.*, Inc., 202 F.3d 129, 134 (2d Cir. 2000)). Moreover, summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. *Id.* (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998)).

At the summary judgment stage, the Court's function is not to weigh the evidence or determine the truth of the matter, but to assess whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied, even if no opposing evidentiary matter is presented. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970).

## II.     ELAM STATES A PRIMA FACIE CASE FOR ASSOCIATIONAL DISABILITY DISCRIMINATION UNDER THE ADA AND THE NYCHRL

Defendants discriminated against Elam by, among other things, terminating his employment on the basis of his wife's disability in violation of the ADA and NYCHRL. For the reasons shown below, Elam successfully states claims of disability discrimination, and these claims should not be dismissed.

**A. *Under McDonnell-Douglas, Elam has shown that his termination was motivated by associational disability.***

Claims of ADA associational discrimination are analyzed under the *McDonnell-Douglas* framework. *Moscarello v. Malcom Pirnie, Inc.,* 2008 WL 6192101, at *4 (S.D.N.Y. Feb. 17, 2008). Under *McDonnell-Douglas*, a plaintiff must first establish a *prima facie* case. *Id.* Thereafter, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for taking an adverse employment action. *Id.* The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason was pretext. *Id.*

To establish a *prima facie* case of associational disability discrimination, a plaintiff must show that: (i) he was qualified for the job at the time of an adverse employment action; (ii) he was subjected to adverse employment action; (iii) he was known at the time to have a relative or associate with a disability; and (iv) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 432 (2d Cir. 2016). Defendants concede that Elam was subject to adverse employment action and that Defendants knew at the time of any adverse employment action that his wife had a disability. Therefore, Elam must only address the first (qualified) and fourth (reasonable inference) elements.

**First element:** To determine whether an individual was "qualified for the job" at the time of any adverse employment action, a court examines whether the individual has the requisite skill, experience, education, and other job-related requirements of the position. *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). Where the employer has already hired the employee and the reason for termination is at issue, the inference of minimal qualification is not difficult to draw. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 (2d Cir.

2001).  By hiring the employee, the employer has already expressed a belief that the plaintiff is minimally qualified, and by retaining the plaintiff for a significant period of time, the strength of the inference that he possesses the basic skills required for his job is heightened.  *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001); *see also Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 572 (S.D.N.Y. 2010) (finding that the fact that plaintiff was hired for the position and remained employed for two years was sufficient to establish qualification for the position).

Here, it is undisputed that Elam had been employed by Concourse for approximately ten (10) years.  (Elam Dep. 49:8-10, 21:3-5).  Nor is it disputed that Concourse gave Elam periodic raises in recognition of his satisfactory completion of his job duties.  (Ex. A and B, Elam Decl.; Elam Decl. ¶ 5; Elam Dep. 127:6-11.)  These facts suffice to show that Elam was qualified for the job.

Defendants mistakenly argue that Elam was not qualified because of alleged performance deficiencies.  While an employer's dissatisfaction with an employee's performance may ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action, to satisfy his burden Elam need only "establish basic eligibility for the position at issue."  *Grant v. Roche Diagnostics Corp.*, No. 09-CV-1540,  2011 WL 3040913, at *6 (E.D.N.Y. July 20, 2011) (citing *Slattery,* 248 F.3d at 92).  In fact, the Second Circuit has held that it is "error to find that plaintiff has not established a *prima facie* case merely because employer was dissatisfied with plaintiff's performance."  *Chukwurah v. Stop & Shop Supermarket Co.,* 354 Fed. Appx. 492, 494–95 (2d Cir. 2009).

**Fourth element**: Plaintiff has shown that that his termination "occurred under circumstances raising a reasonable inference" that associational disability discrimination was a

determining factor because James and Bowry made anti-disability remarks and departed from established procedure when terminating Plaintiff.

Preliminarily, the ADA prohibits "[d]iscriminat[ion] against a qualified individual on the basis of disability includ[ing] … because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C § 12112 (b)(4).  In *Graziadio v. Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016), the Second Circuit drew guidance from *Larimer v. International Business Machines Corp.*, 370 F.3d 698 (7th Cir. 2004), in which the Seventh Circuit outlined situations or theories that were within the intended scope of associational discrimination: an employee is terminated because (i) his spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan; (ii) the employer fears that the employee may become infected with a disease the associated individual has, or fears one of the employee's blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability; and (iii)  the employee is somewhat inattentive at work because his spouse has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation.  *Larimer*, 370 F.3d at 700.  The third situation applies here.

A reasonable jury could conclude that James' resistance to allowing Elam time off to care for his wife demonstrated that James believed Elam's wife's disability would cause Elam to be inattentive at work.  Elam's use of sick time to care for his wife did not violate any Concourse policy.  (Henry Dep. 104:4–9; Elam Dep. 264:3–8).  However, Elam was prohibited from using his sick time to care for his wife.  (Elam Decl. ¶ 41; Elam Dep. 225:24–226:2, 228:2-5.)  James remarked that he was "in charge now," and that "This is a place of business…things don't work around your wife because she's handicapped" (Elam Decl. ¶ 23-24; Elam Dep. 222:2-19), which

lays the evidentiary foundation that James believed Elam's wife's disability would cause inattentiveness. When Elam objected to James' prohibition against Elam using sick time to care for his wife, James responded in a hostile manner, telling Elam that he "didn't care" that his wife was disabled. (Elam Decl. ¶ 43; Elam Dep. 221:3-9, 268:8-13.) As a participant in deciding to terminate Elam, James' remarks show an unlawful animus. (James Dep. 121:9-11.) Bowry also mocked Elam's wife's disability and Elam's circumstances. (Ex. M, Elam Decl.) Remarks such as these are sufficient to show circumstances from which the inference may be drawn that Elam's wife's disability was a motivating factor in his termination. *Darcy v. City of New York*, No. 06-CV-2246 RJD, 2011 WL 841375, at *6 (E.D.N.Y. Mar. 8, 2011).

Moreover, courts frequently find that procedural irregularities establish an inference of discriminatory intent, and Elam's termination was rife with them. *Tolbert v. Smith*, 790 F.3d 427, 438 (2d Cir. 2015). First, James, Henry, and Bowry all testified that Concourse had a progressive discipline policy, which required an employee to receive an oral warning and then a written warning before termination. (James Dep. 33:4, 33:18–34:15; Henry Dep. 94:5-21; Bowry Dep. 93:8-13.) However, this policy was not followed with Elam. Second, James gave Elam a write-up less than one day after Elam had used a sick day to care for his wife, even though he testified that he normally would not give a write up after a first offense. (Elam Decl. ¶ 33, 34, 37; James Dep. 33:4, 33:18–34:15.) Third, James gave him the write-up even though Elam had contacted Concourse advising them that he would be absent. (Elam Decl. ¶ 33, 34, 37). Fourth, Meyers, a Board member, stated directly that Elam should not have been fired. (Ex. O and T, Harman Decl.; Elam Dep. 251:19-25). Fifth, even though the Board normally votes whether to terminate an employee, there was no vote before terminating Elam. (Elam Decl. ¶ 80; Elam Dep. 251:19-25.) Sixth, James would not allow Elam to use sick time to take care of his

wife, even though it was allowed under Concourse's sick time policy.  (Elam Dep. 104:4–9; 225:24–226:2; 227:18-23; 228:2-5.)

Accordingly, Elam has stated a *prima facie* claim of associational disability discrimination.

**B. *Elam states a claim for associational disability discrimination under the NYCHRL.***

Claims under the NYCHRL are not analyzed under the *McDonnell-Douglas* framework.  *Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 12 (2d Cir. 2013) (summary order); *see also Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 936 N.Y.S.2d 112, 120 (1st Dep't App. Div. 2011) ("a court should ordinarily avoid the unnecessary and sometimes confusing effort of going back to the question of whether a prima facie case has been made out in the first place").  Rather, the Second Circuit has explained, "the NYCHRL simplified the discrimination inquiry: the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013).  Additionally, there is no authority limiting NYCHRL associational disability discrimination claims to only those three types of situations described in Section II.  As shown above in Section II (A), Elam has provided sufficient evidence that a reasonable juror could find that Defendants treated Elam less well, at least in part due to associational disability discrimination.

**III.    DEFENDANTS' ARTICULATED REASON FOR ELAM'S TERMINATION IS PRETEXT**

Defendants' stated reason for Elam's termination was that he "failed to maintain the stockroom to CVI's standards" and "insubordination."  Defs.' Mem. at 16.  As such, the burden shifts back to Plaintiff to show that Defendants' proffered reason was pretext.

Under the *McDonnell-Douglas* analysis, a plaintiff need not prove that discrimination was the primary motivating factor, in the adverse employment action; *he need only prove that discrimination was a motivating factor*. *Olson v. New York*, 315 F. App'x 361, 363 (2d Cir. 2009) (summary order). Summary judgment should be denied where the plaintiff provides evidence that a reasonable jury could conclude that discrimination was "a motivating factor." *Fields v. N.Y. State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116, 121–22 (2d Cir. 1997). Summary judgment is inappropriate if the employer's nondiscriminatory reason is not dispositive and does not foreclose any issue of material fact. *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 301 (S.D.N.Y. 2014) (citing *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003)).

First, as discussed above in Section II (A), there were significant procedural irregularities surrounding Elam's termination and James and Bowry both made anti-disability discrimination remarks. These remarks and irregularities independently provide a basis to preclude summary judgment. *Zahorik v. Cornell Univ.*, 729 F2d 85, 93 (2d. Cir 1984) ("Departures from procedural regularity, such as a failure to collect all available evidence, can raise a question as to the good faith of the process where the departure may reasonably affect the decision."); *Darcy*, 2011 WL 841375, at *6 (finding that decision maker's anti-disability remarks preclude summary judgment). Notably, Bowry testified that Elam was terminated for insubordination. (Bowry Dep. 95:22–96:15.) Yet Elam was never disciplined once for insubordination, even though James, Henry, and Bowry all testified that Concourse has a "three strikes" progressive discipline policy. (James Dep. 33:4–34:15; Henry Dep. 94:5-21; Bowry Dep. 93:8-13.) Adding to the confusion, Henry testified repeatedly that James was not Elam's supervisor and, therefore, Elam was not to report to James. (Henry Dep. 63: 6–10; 126:11–17.)

Second, Defendants' reason for terminating Elam has changed over the course of this litigation, which also indicates pretext.  *See, e.g., Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 845 (2d Cir. 2013) ("inconsistent and contradictory explanations for the plaintiff's termination … are sufficient to create a genuine dispute of material fact ….."); *Weiss v. JPMorgan Chase & Co.*, 332 Fed Appx 659 (2d Cir. 2009) ("Inconsistent … explanations for a termination decision may suggest discriminatory motive.").  Defendants originally stated in Elam's termination letter that Elam was terminated because: "Maintenance Unit/Restorative Unit Staff has requested material from [Elam] to complete their job and [Elam] was unable to do so." Bowry testified that he was fired because he would not "take direction" from James.  (Bowry Dep. 95:22–96:15.)  As such, Defendants' reason for terminating Elam has shifted from the time of his termination to Defendants' filing of the instant motion.  This shift is sufficient for a reasonable juror to infer pretext.

Third, for nearly ten years Defendants rated Elam's job performance favorably, and Henry and Bowry were aware of his alleged deficiencies without terminating him or disciplining him.  (Ex. R, Harman Decl.; Ex. B, Elam Decl.)  Yet, only two (2) months after James learned of his wife's disability, Concourse ended his employment.  Due to the timing of the incidents in this context, a reasonable jury could conclude that associational disability discrimination played a motivating role.  *Fitzgerald v. Shore Memorial Hospital*, 92 F. Supp. 3d 214, 233 (D.N.J. 2015).

Accordingly, Elam has raised genuine disputes of material fact precluding summary judgment.

## IV.    ELAM'S RETALIATION CLAIMS SHOULD NOT BE DISMISSED

As shown below, through James and Bowry, Concourse retaliated against Elam for engaging in protected activity.

**A.    *Elam's retaliation claim under the ADA should not be dismissed.***

Claims of ADA retaliation are analyzed pursuant to the *McDonnell-Douglas* framework. *Tse v. New York Univ.*, 2013 WL 5288848, at \*16 (S.D.N.Y. 2013). To state a *prima facie* case of retaliation, a plaintiff must show: (i) he participated in a protected activity; (ii) the defendant knew of this participation in a protected activity; (iii) an adverse employment action; and (iv) a causal connection between the protected activity and the adverse employment action. *Id.* Retaliation must be "materially adverse to a reasonable employee." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006). "[A] plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a 'good faith, reasonable belief that the underlying challenged actions of the employer violated that law.'" *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F. 3d 155, 159 (2d Cir. 1999). A retaliation claim is actionable if a reasonable person would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* A plaintiff must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Here, Elam properly used sick time to care for his wife in accordance with Concourse policy. (Elam Decl. ¶ 42; Ex. G, Elam Decl.; Henry Dep. 104:4–9.) James, however, wrote him up for doing so and told him he was prohibited from doing so in the future. (Elam Decl. ¶ 37, 41; Elam Dep. 225:24–226:2, 228:2-5.) Elam possessed a good faith, reasonable belief that James' actions were in violation of the ADA. (Elam Decl. ¶ 22, 25.) Elam complained to James, Henry, and ultimately to Christina Verney about activity for which Elam had a good-faith belief was protected. (Elam Dep. 221:3-9, 268:8-13; Verney Dep. 8:18-21, 98:3-8.) After each

complaint, James escalated retaliation against him—beginning with specious write ups and ending with Elam's termination, less than three months after James joined Concourse and less than three weeks after Elam's final complaint. As such, Elam has established a *prima facie* case.

As discussed in Section II (A), Elam has shown that Defendants' proffered reason for his termination was pretext, and that a reasonable jury could conclude that associational disability discrimination was a factor.

**B.** ***Elam's retaliation claim under the NYCHRL should not be dismissed.***

Discrimination claims are analyzed the same under the ADA and the NYCHRL, except that the NYCHRL uses the motivating factor analysis rather than but-for cause. As shown above in Section IV(A), a reasonable jury could conclude that Elam's termination was motivated by protected conduct under the more difficult but-for standard. Therefore, a reasonable jury could also conclude retaliation under the more lenient NYCHRL motivating factor standard.

**V.  ELAM'S CLAIMS AGAINST BOWRY AND JAMES SHOULD NOT BE DISMISSED**

Under the NYCHRL, an individual may be liable where he or she "actually participates in the conduct giving rise to the plaintiff's … claim." *Malena v. Victori's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Here, Bowry and James made anti-associational disability discrimination statements and spearheaded the decision to terminate Elam. (Elam Decl. ¶ 23, 43, 72, 78, 79; Ex. M, Elam Decl.; Ex. O, Harman Decl.; Elam Dep. 251:12-15.) As such, a reasonable jury could conclude that James and Bowry actually participated in conduct giving rise to Elam's association disability discrimination claim.

## VI.  ELAM'S FMLA CLAIMS SHOULD NOT BE DISMISSED

### A.  *Elam's interference claim should not be dismissed.*

Under the FMLA, a qualifying employee is entitled to a total of twelve (12) workweeks of leave during any 12-month period to care for a spouse with a serious health condition.  29 U.S.C. §§ 2612(a)(1), 2612(a)(1)(C).  The FMLA provides for "intermittent leave"—that is, "leave taken in separate blocks of time due to a single qualifying reason."  29 C.F.R. § 825.202(a).  Intermittent leave "may include leave of periods from an hour or more to several weeks."  29 C.F.R. § 825.202(b)(1).  Elam alleges Defendants interfered with his right to take intermittent FMLA leave.  In an FMLA interference claim, "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act."  *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 464-65 (S.D.N.Y. 2011).

To state an interference claim under 29 U.S.C. § 2612(a)(1), a plaintiff must adequately plead: (i) that he is an eligible employee under the FMLA; (ii) that the defendant is an employer as defined in the FMLA; (iii) that he was entitled to leave under the FMLA; (iv) that he gave notice to the defendant of his intention to take leave; and (v) that he was denied benefits to which he was entitled under the FMLA.  *Id.*  Defendants concede that Elam has fulfilled the first, second, third, and fifth elements; the only issue is the fourth—whether Elam gave notice to Defendants of his intention to take leave.

Interference with FMLA rights can include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."  29 C.F.R. § 825.220(b); *Casseus v. Verizon New York*, 722 F. Supp. 2d 326, 336 (E.D.N.Y. 2010).  Under the FMLA, employers first provide general notice to their FMLA eligible employees of their rights under the FMLA. 29 C.F.R. § 825.300.  To meet the general notice requirements, covered employers must display

a poster delineating rights under the FMLA, provide a separate general notice containing the same information in the poster, and provide an employee eligibility notice within five business days of when the employer learned that an employee's leave may be for an FMLA-qualifying reason.  29 CFR § 825.300(a)(1), (a)(3), and (b)(1).  A failure to provide employees with adequate FMLA notice results in an interference claim where the lack of notice caused the employee to forfeit FMLA Leave.  *Sarno,* 183 F.3d 155 ; *LeClair v. Berkshire Union Free Sch.*, No. 1:08-CV-01354, 2010 U.S. Dist. Lexis 114835, at *22 (N.D.N.Y. October 28, 2010).

Here, Defendants never complied with any of the above-described notice requirements, failing either to display a poster that notifies employees of the provisions of the FMLA or to provide a general notice to FMLA–eligible employees.  (Bowry Dep. 66:21–67:8; Elam Dep. 276:18–277:2.)  Further, James discouraged Elam from taking time to care for his wife by prohibiting him from using sick time to care for his wife and failing to provide him with the alternative of using the FMLA.  (Elam Decl. ¶ 14, 41; Elam Dep. 225:24–226:2, 228:2-5.)  James also disciplined Elam for taking Elam's wife to a doctor's appointment during work hours.  (Elam Decl. ¶ 37; Elam Dep. 227:18-23.)  Additionally, Elam stopped providing care for his wife's serious medical condition during work hours as a result of James' discipline.  (Elam Decl. ¶ 47; James Dep. 119:19-23.)

Defendants' argument—that Elam's claim fails because he never notified Defendants he needed FMLA leave to care for his wife—turn the FMLA notice requirement on its head.  An employer who never provided its employee with any notice of the FMLA—whether in its handbook, training, posters, or individual notice—should not then be able to escape liability by claiming that an eligible employee never provided the employer with specific notice of a desire for FMLA leave.

Further, the FMLA does not require that an employee give notice of a desire to invoke the FMLA. *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997). Rather, it requires that the employee give notice of need for FMLA leave. *Id.* This kind of notice is given when the employee requests leave for a covered reason. *Id.* After a notice of this sort the employer can inquire further to determine if the FMLA applies. *Id.* The activation of this duty of inquiry requires the employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c). If an employer does not have adequate information regarding the employee's reason for taking leave, the employer "should inquire further to ascertain whether the paid leave is potentially FMLA qualifying." 29 C.F.R. § 825.208(a)(2).

In determining whether adequate notice of the need for FMLA leave was given to an employer, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Barnett v. Revere Smelting & Ref. Corp.*, 67 F. Supp. 2d 378, 385 (S.D.N.Y. 1999) (McMahon, J) (citing *Manuel v. Westlake Polymers Corp.*, 66 F. 3d 758, 764 (5th Cir. 1995)). In fact, the employee need not even mention the FMLA. 29 C.F.R. § 825.303(a). "The inquiry is generally a question of fact, not law." *Fitzgerald*, 92 F. Supp. 3d at 228. Courts have held that an employee had provided sufficient notice to an employer of a family member's serious health condition when the employer knew of the family member's medical condition. *See Zawadowicz v. CVS Corp.*, 99 F. Supp. 2d 518, 529 (D.N.J. 2000) (denying summary judgment where employer had notice of family member's serious health condition); *Mora v. Chem-Tronics Inc.*, 16 F. Supp. 2d 1192, 1211–1216 (S.D. Cal. 1998) (same). Here, Plaintiff informed his employer

of his wife's disability, her related ongoing medical issues, and her inability to care for herself due to her disability.  (Elam Dep. 262:14-25; Bowry Dep. 89:22-25; Henry Dep. 71:9-14, 92:10-12; James Dep. 109:14-17.)  Verney even testified that if she knew of an employee who was missing work because of a health issue involving a spouse, it would be an FMLA qualifying event.  (Verney Dep. 110:24–111:18; 112:7–12.)

Finally, Defendants' statements that Concourse "granted other employees FMLA leave" is without consequence.  First, Defendants only identified two employees to whom they allegedly granted FMLA: Michael Daiz and "Washington."  James testified that Daiz did not use FMLA leave but instead used vacation time.  (James Dep. 54:15.)   He also testified that he was "not sure" as to what, if any, leave Washington was on.  (James Dep. 54:12.)  Second, Henry's only testimony on the issue was that she knew of several employees who used leave to care for family members.  (Henry Aff. ¶ 20.)  She does not mention whether they used FMLA leave, nor does she provide any details describing how she reached that conclusion.  From such paltry evidence, a reasonable jury could conclude that Defendants had not satisfied the FMLA's notice requirements with respect to Elam.

As such, there are genuine issues of material fact as to whether Defendants provided the required notice and, therefore, whether a reasonable jury could conclude that Defendants interfered with Elam's rights under the FMLA.

**B.** ***Elam's FMLA retaliation claim should not be dismissed because the FMLA prohibits retaliation for an employee's invocation of right to take leave.***

To establish a *prima facie* case of FMLA retaliation, a plaintiff must establish that (i) he exercised rights protected under the FMLA; (ii) he was qualified for his position; (iii) he suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  *Graziadio,* 817 F.3d at 429.  As

discussed in Section II (A), Elam was qualified for his position, and Defendants concede that he suffered adverse employment action; the only issues are the first and fourth elements.

**First element:** Exercising FMLA leave includes the invocation of FMLA rights, not only the actual commencement of leave. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009). "[I]t would be patently absurd if an employer who wished to punish an employee for taking FMLA leave could avoid liability simply by firing the employee before the leave begins." *Id.*[2] Here, Defendants failed to provide Elam with any notice whatsoever about his right to take FMLA leave to care for his wife, even though Elam sought to take time off to care for her. Indeed, James told Elam that he was not allowed to use his sick time to care for his wife, stating that he did not care about her and that Concourse was a place of business. (Elam Decl. ¶ 23, 41; Elam Dep. 222:2-11, 222:18-19.) Neither James nor any other Defendants provided Elam with FMLA leave as an alternative to sick time. (Elam Decl. ¶ 14; James Dep. 115:3-5; Verney Dep. 112:20-25; Henry Dep. 120:5-8; Elam Dep. 276:21–277:2.) After James rejected his request for leave, Elam no longer took care of his wife during work hours, a right to which he was entitled under the FMLA. (Elam Decl. ¶ 46; James Dep. 119:19-23.)

Defendants mistakenly rely on *Hahn v. Office & Professional Employees Int'l Union, Local 153*, 13-CV-946 (JGK), 2016 WL 4120517 (S.D.N.Y. July 22, 2016) and *Wahl v. Cty. of Suffolk*, 466 F. App'x 17 (2d Cir. 2012). In *Hahn*, it was undisputed that plaintiff used defendant's paid time off rather then FMLA and therefore any lack of notice was harmless, as he would not have used it. *Hahn*, 2016 WL 4120517. In *Wahl*, it was undisputed that defendant

---

[2] The U.S. District Court for the Southern District of New York has relied on *Erdman*. *Dessources v. American Conference Institute*, No. 12 CIV. 8105 (PKC), 2013 WL 2099251, at *3 (S.D.N.Y. May 15, 2013); *Marchioli v. Garland Co., Inc.*, No. 5:11-CV124 (MAD)(ATB), 2011 WL 1983350, at *6 (N.D.N.Y May 20, 2011); *Young v. U.S. Dept. of Homeland Sec*, No. 10 CIV. 9571 (RJS), 2011 WL 6057849, at *3 (S.D.N.Y Dec. 5, 2011).

had counseled plaintiff that he could take child care leave under the FMLA but he chose not to because he wanted to use his accrued sick time. *Wahl*, 466 F. App'x at 20. As such, Elam's situation is distinguishable from Defendants' authority, and Elam has satisfied the first element.

**Fourth element:** As discussed in Section III, Elam has established facts from which a reasonable jury could conclude that his termination was pretext and therefore motivated at least in part by retaliatory intent.

Accordingly, there are genuine disputes of material fact, and this claim should not be dismissed.

### C. *Elam's FMLA claims against the individual Defendants should not be dismissed.*

An individual may be held liable under the FMLA only if she is an "employer," which is defined as encompassing "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I); *see also* 29 C.F.R. § 825.104(d). The FMLA's definition of "employer" largely tracks the definition of "employer" used in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(d), and have come to the reasoned conclusion that the standards used to evaluate "employers" under the FLSA should therefore be applied to govern the FMLA as well. *Graziadio*, 817 F.3d at 422.

Under this test, courts ask whether the alleged employer possessed the power to control the worker in question, with an eye to the economic reality presented by the facts of each case. *Id*. To do so, they consider a nonexclusive and overlapping set of factors, which includes whether the alleged employer (i) had the power to hire and fire the employees, (ii) supervised and controlled employee work schedules or conditions of employment, (iii) determined the rate and method of payment, and (iv) maintained employment records. *Graziadio*, 817 F.3d at 422. In the FMLA context, courts assessing the economic reality of an employment relationship have

construed this test as asking essentially whether the putative employer "controlled in whole or in part plaintiff's rights under the FMLA." *Id.* at 423. Defendants only argue that James and Bowry did not participate in any decision of whether to grant or deny Elam FMLA benefits. As such, Defendants ignored the relevant test and concede all of the above-mentioned factors

Both James and Bowry knew of Elam's wife's condition and did not provide Elam with any notice under the FMLA or report it to someone who would provide the notice. (James Dep. 115:3-5; Verney Dep. 112:20-25; Henry Dep. 120:5-8; Elam Dep. 276:21–277:2.) Further, they both were aware of the FMLA and the rights that it conveyed to Elam. (Bowry Dep. 63:10-15; James Dep. 48:14-18.) As such, both James and Bowry were employers under the FMLA and, therefore, individually liable.

## **CONCLUSION**

Plaintiff has established that there are genuine issues of material fact. As such, this Court must find as a matter of law that Defendants are not entitled to summary judgment and deny their motion for summary judgment.


Dated: New York, New York
       October 14, 2016

By:    s/ Walker G. Harman, Jr.
       Walker G. Harman, Jr. [WH-8044]
       Edgar M. Rivera [ER-1378]
       **The Harman Firm, LLP**
       220 Fifth Ave., Suite 900
       New York, NY 10001
       (212) 425-2600
       wharman@theharmanfirm.com
       erivera@theharmanfirm.com
       *Attorneys for Plaintiff*
