UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WALTER ELAM,

        *Plaintiff*,

   v.

CONCOURSE VILLAGE, INC., ANTHONY
JAMES, *individually, and* LETITIA BOWRY,
*individually*,

        *Defendants*.
------------------------------------------------------------X

15 CV 7215

**PLAINTIFF'S COUNTER
STATEMENT OF UNDISPUTED
MATERIAL FACTS UNDER
<u>LOCAL CIVIL RULE 56.1</u>**

Pursuant to L. CIV. R. 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff Walter Elam respectfully submits the following Counter Statement in response to Defendants' Statement of Undisputed Material Facts.

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 1. Concourse Village, Inc. ("CVI," or "Concourse Village") is the owner of a residential cooperative apartment complex, comprised of six buildings, in the Bronx, New York (the "Property"). (Bowry 64:8-13; Elam 48:15-25;[1] James Aff. ¶4[2]). | Plaintiff admits. |
| 2. CVI employs between 69 and 72 unionized maintenance employees, including porters and handymen, who are responsible for maintaining the Property. (Henry 21:21-24; James 26:23-24). | Plaintiff admits. |
| 3. CVI also employs approximately 7 non-union supervisory employees. These employees include a Maintenance Director, a Lead Maintenance Supervisor, and 4 supervisors, including a Stockroom Supervisor. (James Aff. ¶6; Henry 21:16-24). | Plaintiff admits. |
| 4. At times, some of these supervisory positions were vacant. (Bowry 56:17-21). | Plaintiff admits. |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 5. CVI is led by its Board of Directors (the "Board"), which is comprised of 12 shareholders who volunteer their time to ensure the proper management of the Property. (Bowry 31:7-23, Bowry Aff. ¶4). In 2015, there were 13 individuals on the Board. (Bowry Aff. ¶4). | Plaintiff admits. |
| 6. Letitia Bowry ("Bowry"), a 30-year resident of CVI, was the Board's President in 2015. (Bowry 28:5-8, 29:20-24). | Plaintiff admits. |
| 7. Prior her current term on the Board, Bowry also served as the Board's President from 2002-2006 and as the Assistant Vice President from 2000-2002. (Bowry 29:7-19). | Plaintiff admits. |
| 8. To assist with managing the Property, the Board retains a managing agent. Winn WB Management Company LLC ("Winn") served as CVI's managing agent between 2012 and 2016. (Bowry Aff. ¶5; Bowry 54:5-8). | Plaintiff admits. |
| 9. Winn's responsibilities included hiring and firing the union employees. (Bowry 92:4-14, 104:20-21). | Plaintiff admits. |
| 10. The Board was responsible for hiring and firing the non-union supervisory employees. (Bowry 92:4-14, 104:20-21). | Plaintiff denies. (James Dep. 67:2-7.) |
| 11. Sherill Henry ("Henry"), a Winn employee, served as the General Manager of CVI from September 2012 to November 2015. (Henry 20:2-3). | Plaintiff admits. |
| 12. As the General Manager, Henry was responsible for the general administration of the Property, which included compliance, budgeting, sales, financing, and insurance issues, as well as directly or indirectly supervising the union and non-union employees at the Property. (Henry 19:13-19, 27:4-25, 28:2-11; Henry Aff. ¶4). | Plaintiff admits. |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 13. Henry reported directly to the Board and provided them with regular updates concerning the Property's operations. (Henry 22:5-7; Henry Aff. ¶4). | Plaintiff admits. |
| 14. CVI hired Walter Elam ("Elam") in or about 2005. (Elam 49:8-10). | Plaintiff admits. |
| 15. Elam served as the Stockroom Supervisor, a non-union position. (Elam 49:13-25; Henry 33:8-10). | Plaintiff admits. |
| 16. As then-President of the Board, Bowry was influential in CVI's decision to hire Elam. (Bowry 131:13-15). | Plaintiff denies. (Elam Dep. 48:5-10.) |
| 17. Bowry ran for President of the Board at the request of certain residents, in order to improve the operations of the Property, including its maintenance and safety. (Bowry 35:21-25, 36:2-14). | MOVE TO STRIKE: Bowry lacks personal knowledge of why unnamed residents allegedly supported her campaign for President of the Board. |
| 18. After Bowry's election, Bowry and the Board recognized that in order to address these concerns at the Property, CVI had to improve management of its employees. (Bowry Aff. ¶7; Bowry 55:10-16). | Plaintiff denies. (Bowry Dep. 54:16–57:24.) |
| 19. Bowry and other Board members believed that some CVI employees lacked a strong work ethic and accountability for their work. (Bowry Aff. ¶7). This resulted in the Property not being maintained to the standards of the Board. (Bowry Aff., Ex. ¶7). | Plaintiff denies. (Bowry Dep. 54:16–57:24.) <br><br> MOVE TO STRIKE: Bowry lacks personal knowledge of what other Board members believed. |
| 20. In early 2015, Bowry and several Board members met with the CVI employees to discuss the Board's concerns with their collective work performance and lack of professionalism. (Bowry Aff. ¶8; Henry Aff. ¶18). At this meeting, Bowry informed the employees that CVI would terminate those employees whose work performance did not improve. (Bowry Aff. ¶8). | Plaintiff denies. (Elam Decl. ¶ 81.) |
| 21. CVI hired Anthony James ("James") in April 2015 as Lead Maintenance Supervisor. (James 91:19-21). | Plaintiff admits. |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 22. CVI intended to promote James to Maintenance Director if he performed well as Lead Maintenance Supervisor. (Bowry Aff. ¶9). | Plaintiff admits. |
| 23. James had experience in plumbing and construction, and knowledge of the materials necessary for this work. (James 122:14-17, James Aff. ¶3). | Plaintiff admits. |
| 24. James served as Lead Maintenance Supervisor until March 2016 when CVI promoted him to Maintenance Director. (James 21:6-9). | Plaintiff admits. |
| 25. Prior to James' employment at the Property, the Lead Maintenance Supervisor position had been vacant for approximately one year, and the Maintenance Director position had been vacant for several months. (Henry Aff. ¶12). | Plaintiff admits. |
| 26. As Lead Maintenance Supervisor, James was responsible for the maintenance and upkeep of the Property, as well as addressing resident issues. (James 24:7-25, 25:2-9). | Plaintiff admits. |
| 27. Since there was no Maintenance Director, James assumed the responsibility of managing the maintenance staff. (Henry 101:10-15). | Plaintiff denies. (Elam Dep. 223:14; 244:15-25; Henry Dep. 63: 6–10; 126:11–17.) |
| 28. As of June 13, 2015, James was Elam's supervisor. (Elam 59:2-5, 16-23). | Plaintiff denies. (Elam Dep. 57:10-11; Henry Dep. 126:14-17.) |
| 29. Upon commencement of his employment, James focused on learning about the Property itself and any maintenance issues, as well as the Property's operations, staffing, policies and procedures. Once James became familiar with the Property's operations, he then sought to make improvements. (James Aff. ¶13; James 127:4-19). | Plaintiff denies. (Ex. J, Elam Decl.) |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 30. James identified the stockroom, which Elam supervised, as one area that needed vast improvement. (James Aff. ¶14). He believed that the stockroom did not have the supplies necessary for the employees to maintain the Property, many materials in the stockroom were either of poor quality or obsolete, and the materials in the stockroom were disorganized and not labeled. (James Aff. ¶14; James 126:11-19). | Plaintiff denies. (Ex. A, B, and C, Elam Decl.; Ex. R, Harman Decl.) |
| 31. James was also concerned that Elam's responses to James' questions demonstrated a lack of basic knowledge about the inventory and its uses. (James Aff. ¶15). This concerned James as it is necessary to have an understanding of property maintenance in order to ensure the stockroom contained proper materials. (James Aff. ¶15). | Plaintiff denies. (Elam Decl. ¶ 5; Ex. A, B, and C, Elam Decl.; Ex. R, Harman Decl.) |
| 32. CVI's stockroom holds the supplies and equipment necessary for its maintenance employees to perform their tasks of cleaning and maintaining the common areas of the Property and its grounds, renovating vacant apartments, performing repairs in common areas or for residents, plumbing and electrical work, and general maintenance, including construction. (James Aff. ¶10). | Plaintiff admits to the extent that the stockroom holds some of the supplies and equipment necessary for Concourse's maintenance employees. (Ex. P and Q, Harman Decl.) |
| 33. The stockroom has many different types of materials. (Elam 121:14-15). | Plaintiff admits. |
| 34. The stockroom is located in the same building as the management office, on the opposite side of the building. The stockroom and the management office have separate outside entrances. (James Aff. ¶11; Bowry 79:3-4). | Plaintiff admits. |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 35. As Stockroom Supervisor, Elam was responsible for maintaining an adequate level of supplies in the stockroom, securing the stockroom to prevent theft and/or abuse in the use of supplies, distributing supplies and equipment, and conducting an inventory of the supplies in the stockroom. (Elam 78:23-25, 79:2-25, 80:10-12). | Plaintiff admits. |
| 36. James believed that it is important that the Stockroom Supervisor perform these tasks well in order to reduce or prevent the displacement of or needless spending on materials or tools, and to keep the maintenance staff equipped with materials to do their work. (James Aff. ¶12). James believed, without a Stockroom Supervisor who is accountable for the materials and equipment in the stockroom, the maintenance staff cannot perform their jobs. (James Aff. ¶12). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |
| 37. In September 2013, one of Elam's supervisors, Tyrone Barnes ("Barnes") observed with respect to the stockroom that, "[t]here appears to be no system here at CVI which is worrisome." (Henry Aff. ¶7; Henry Aff., Ex. A; Elam 109:24-25, 110:2-3). | Plaintiff denies. (Elam Dep. 109:24–110:3.) |
| 38. Barnes provided Elam with inventory training. (Henry Aff. ¶6; Elam 110:15-17, 113:21-25). | Plaintiff denies. (Elam Dep. 110:15-17, 113:6-10.) |
| 39. Barnes requested that Elam review a maintenance shop handbook, which provided sample computerized stockroom inventory lists and instructions on how to maintain organization within the stockroom and complete a monthly inventory. (Elam 111:7-12; Henry Aff., Ex. A; Henry Aff. ¶7). | Plaintiff denies. (Elam Dep. 113:5-10.) |
| 40. Elam admitted that he did not review the handbook. (Elam 114:14-16, 115:20-24). | Plaintiff admits. |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 41. Henry also recognized that the stockroom operations needed improvement. (Henry 76: 15-18). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |
| 42. In Elam's September 2014 performance review, Henry wrote that Elam "is encouraged to develop an inventory system in which on hold stock amounts and required stock could be more readily and easily attained." (Henry Aff., Ex. B). | Plaintiff denies. (Elam Dep. 71:11-24.) |
| 43. During Henry's tenure at General Manager, Henry observed that Elam took time off from work without informing her or Elam's other supervisors. (Henry 69:19-25, 70:2-3). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |
| 44. Henry was not concerned with the amount of time Elam took off from work; but rather, his failure to provide his supervisors with notice of his need for time off. (Henry 122:17-25, 123:2-12). Henry believed that Elam's supervisors needed to be informed of his time off directly, and not through Elam's assistant, to avoid having to search for him during the work day. (Henry 73:12-14, 73:16-18). | Plaintiff denies. (James Dep. 106:2–107:3.) |
| 45. In or around September 2013, Elam left work without informing Henry, his supervisor at the time. (Elam 107:6-10; Henry Aff. ¶10). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |
| 46. In September 2013, Henry instructed Elam that he must let her know when he had to leave work early. (Elam 107:20-24; Henry Aff. ¶10; Henry Aff., Ex. C). | Plaintiff admits, but denies to the extent that there are exceptions for extenuating circumstances, such as emergencies. (James Dep. 71:22-25.) |
| 47. Henry also verbally told Elam several times to let her know of his absences or lateness. (Henry 122:20-25). | Plaintiff admits. |
| 48. Henry observed that Elam left work without informing his supervisors after their conversation in September 2013. (Henry Aff. ¶11). | Plaintiff denies. (Henry Dep. 50:18-22.) |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 49. In his September 2014 performance review, Henry specifically stated that "[o]ne of [her] main concerns is that Mr. Elam must advise Management when he has to rush home to take care of emergency situations." (Henry Aff., Ex. C). | Plaintiff admits. |
| 50. The basis for this statement was that, throughout Elam's employment, "[t]here were a number of times when [she] called Walter's area only to find out that he's not at work." (Henry 69:19-25, 70:2-3). | Plaintiff admits. |
| 51. In June 2015, James implemented a system whereby one supervisor would work one evening each weekday. The purpose behind this system was so that the supervisors could supervise the non-supervisory maintenance staff who worked until 11:30 p.m. Prior to the enactment of this system, the supervisory staff generally left by 4 p.m. (James 145:8-25-147:8-13, 150:23-25, 151:2-13). | Plaintiff admits. |
| 52. Elam told James that he was unable to work one evening per week, because he had to care for his wife. (Elam 221:23-222:2-22, 263:2-4; James 147:17-24, James Aff. ¶17). | Plaintiff admits. |
| 53. This was the first time that James learned that Elam had a wife who required care at home. (Elam 263:2-4; James Aff. ¶17). | Plaintiff admits. |
| 54. Bowry and James decided not to require Elam to work an evening shift, as they did not want to interfere with Elam's caretaking responsibilities. (Elam 223:21; James 109:21-25; Bowry 86:9-14). | Plaintiff denies. (Elam Dep. 222:2-14, 222:18-19; Ex. S, Harman Decl.) |
| 55. To accommodate Elam's need to care for his wife, some supervisors worked a second evening shift and/or James stayed late so that a supervisor would be at the Property. (James 146:15-23, 150:21-22). | Plaintiff denies. (Elam Dep. 222:2-14, 222:18-19; Ex. S, Harman Decl.) |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 56. Another change that James implemented in June 2015 was for Elam to attend meetings of the maintenance staff and supervisors' meetings. (Elam 129:3-24; James Aff. ¶20; James Aff., Ex. A). | Plaintiff admits. |
| 57. Elam's previous supervisors did not require that he attend these meetings. (Henry 45:5-20). | Plaintiff admits. |
| 58. James wanted Elam to attend these meetings because he believed that if Elam was aware of all ongoing maintenance operations it would assist him with his stockroom responsibilities. (Henry 45:5-20; James Aff. ¶20). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |
| 59. On several occasions, James would go to the stockroom to speak with Elam, only to find that Elam was not in the stockroom and could not be found on the Property. (James Aff. ¶21). | Plaintiff denies. (Elam Decl., ¶ 39.) |
| 60. An employee also reported to James that Elam was in Harlem during work hours, without informing James that he was leaving the Property. (James Aff. ¶20). | MOVE TO STRIKE: An out of court statement made by "an employee" offered for the truth of the matter asserted is inadmissible hearsay. |
| 61. James believed that it was important that Elam inform James of his need for absences or lateness so that James could assign supervisory coverage to the stockroom. (James Aff. ¶22). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |
| 62. On June 22, 2015, Elam did not come to work between 9 a.m. and 1:54 p.m. (Elam 145:21-24). | Plaintiff admits. |
| 63. Elam did not inform James or Henry of his need to be absent on June 22, 2015. (Elam 145:25, 146:2-3, 147:24-25, 148:2; Henry Aff. ¶14). | Plaintiff denies. (James 106:2–107:3; Elam Dep. 147:5-12.) |
| 64. As a result, James issued Elam a counseling for taking off time from work without notifying him. (James Aff. ¶23; James Aff., Ex. B; Elam 145:10-15, 147:15-17). | Plaintiff denies. (James Dep. 99:4-8; Elam Dep. 221:3-9; 225:24–226:2, 228:2-5; 268:8-13; Henry Dep. 104:4–9; Ex. F, Elam Decl.) |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 65. On June 25, 2015, James issued to Elam a memorandum instructing Elam to provide to him any material orders prior to submission for James' authorization. (Elam 166:18-20; James Aff. ¶25; James Aff., Ex. C). | Plaintiff admits. |
| 66. In response, Elam said he would first have to speak with Henry. (Elam 167:5-8). Elam spoke with Henry, and Henry told Elam to comply with James' instructions. (Elam 167:21-23). | Plaintiff denies. (Elam 167:21-24.) |
| 67. James was concerned about the orderliness of the stockroom and the quality and quantity of its inventory. (James Aff. ¶14). | Plaintiff denies. (Elam Dep. 221:3–9.) |
| 68. James verbally requested several times that Elam provide him with a complete inventory list. (James Aff. ¶24). | Plaintiff denies. (Elam. Decl. ¶ 51.) |
| 69. On Thursday, June 25, 2015, issued Elam a written request that, each week on Fridays, Elam provide James with a list of the stockroom inventory indicating all materials issued from the stockroom and the balance remaining that week. (Elam 166:18-20; James Aff., Ex. C; James Aff. ¶25). | Plaintiff admits. |
| 70. In response, Elam provided James a three page, handwritten document containing three categories of information: the name of the supply, the number issued that week, and the balance remaining. (James Aff. ¶26; James Aff., Ex. D, Elam 180:5-10). | Plaintiff admits. |
| 71. Elam knew that James would not find this handwritten document acceptable. (Elam 199:25, 200:2). | Plaintiff denies. (Elam Dep. 199:25, 200:2). |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 72. Elam did not inform James that his computer was not functional on June 25, 2015. (Elam 179:6-11). | Plaintiff denies. (Elam Dep. 178:5–24.) |
| 73. Elam did not request to use another computer to complete his assignment. (Elam 176:3-5, 179:12-25). | Plaintiff admits. |
| 74. James issued to Elam a counseling on Monday, June 29, 2015. The counseling directed Elam to submit a complete inventory list in typed, spreadsheet form, and that it should identify eleven categories of information, such as the inventory identification number, reorder level, reorder time, quantity in reorder and the contact information for the vendor or supplier. (James Aff., Ex. E; James Aff. ¶28; Elam 174:3-12). | Plaintiff denies. (Ex. J, Elam Decl.) |
| 75. In the counseling, James also questioned Elam's failure to maintain a sufficient amount of paint in the stockroom, considering all the restorative and repair work being performed. (James Aff., Ex. E). | Plaintiff denies. (Ex. J, Elam Decl.) |
| 76. Elam did not have any paint in stock at the time that he submitted the list to James. (Elam 186:19-25, 187:10-13). | Plaintiff denies. (Elam Dep. 186:9-16.) |
| 77. On June 30, 2015, James suspended Elam for three days for his failure to comply with James' instructions and his poor work performance. The disciplinary notice form stated that if such behavior continues, further disciplinary action would be taken, including his termination from employment with CVI. (James Aff. ¶30; James Aff., Ex. F). | Plaintiff denies. (Elam Decl. ¶ 63-65.) |
| 78. The revised list that Elam tendered to James on June 30, 2015 was incomplete, as it did not include categories of information requested in the June 29, 2015 counseling. (Elam 186:6-8, 206:7-8; James Aff., Ex. E). | Plaintiff denies. (Elam Dep. 184:13-15; Ex. T, Harman Decl.) |
| 79. Elam did not come to work on July 3, 2015. (Elam 235:13-15). | Plaintiff admits. |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 80. Elam did not e-mail James, or call James directly to notify him that he would be out on July 3, 2015. (Elam 236:21-23, 237:2-11; James Aff. ¶31). | Plaintiff denies. (Elam Dep. 236:24–25.) |
| 81. By July 2015, some members of the Board were aggravated with Elam and other CVI employees who, they believed, lacked accountability for their work. Despite their previous meeting with the employees earlier in the year, they believed that the employees' collective work performance had not improved. (Bowry Aff. ¶11). | MOVE TO STRIKE: Bowry lacks personal information of what other Board members believed. |
| 82. Bowry and Henry regularly discussed ways to improve the work product of the employees and the maintenance of CVI. (Bowry Aff. ¶12; Henry Aff. ¶17). Henry noted issues with Elam's work performance, including his insubordination and failure to submit a complete and accurate stockroom inventory list. (Bowry Aff. ¶12; Henry Aff. ¶17). | Plaintiff denies. (Elam Decl. ¶ 81.) |
| 83. Henry also discussed issues with the work of Khalid Moore ("Moore") and Joy Madison ("Madison"). Henry told Bowry that Moore and Madison failed to meet Concourse Village's standards for various reasons, including insubordination and leaving work without notification. (Bowry Aff. ¶12; Henry Aff. ¶17). Bowry believed that CVI gave Elam, Moore, and Madison multiple chances to improve their performance, to no avail. (Bowry Aff. ¶12). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |
| 84. Bowry also heard about Elam's poor work performance from James. (Bowry Aff. ¶10). | Plaintiff denies. (Ex. A, B, and C, Elam Decl.; Ex. R, Harman Decl.)<br><br>MOVE TO STRIKE: Out of court statements "Bowry heard" offered for the truth of the matter asserted are inadmissible hearsay. |

12

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 85. Several maintenance men previously complained to Bowry that the quality of the supplies that Elam ordered was inferior, and that Elam often did not have in the stockroom the materials they needed to complete their work. (Bowry 85:6-10, 106:19-22, 108:17-19, 109:10-14, 110:17-20). | MOVE TO STRIKE: Out of court statements made by "several maintenance men" offered for the truth of the matter asserted are inadmissible hearsay. |
| 86. Bowry investigated the workers' accusations by visiting the stockroom. (Bowry 115:2-5). Bowry observed that supplies in the stockroom were not organized or labeled. Bowry felt "ashamed" and "disgusted" by what she saw. (Bowry 115:7-12). | Plaintiff denies. (Ex. A, B, and C, Elam Decl.; Ex. R, Harman Decl.) |
| 87. In early July, five members of the Board and Henry met to discuss the possibility of the termination of Elam's employment. (Bowry 96:25, 97:2-23). | Plaintiff denies. (Ex. T, Harman Decl.; Elam Decl., ¶ 75.) |
| 88. The members of the Board at that meeting ultimately decided to terminate Elam's employment due to his poor work performance and insubordination. (Bowry Aff. ¶14). | Plaintiff denies. (Elam Dep. 251:19-25; Ex. N, Elam Decl.; Ex. O, Elam Decl.) |
| 89. The members of the Board at that meeting concluded that Elam not performing his job responsibilities as Stockroom Supervisor to the level expected by CVI. The Board members at that meeting also believed that Elam thought that he could take time off without notifying or receiving permission from James, his supervisor. The Board members at that meeting noted that Elam had been counseled for these issues, yet failed to improve. (Bowry Aff. ¶14). | Plaintiff denies. (Elam Dep. 251:19-25; Ex. T, Harman Decl.) |
| 90. CVI terminated Elam's employment on July 13, 2015. (Elam 21:3-5). | Plaintiff admits. |
| 91. CVI also terminated the employment of Moore and Madison on July 13, 2015. (Bowry Aff. ¶15). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 92. Moore and Madison did not inform CVI of their association with an individual with a disability. | Plaintiff lacks knowledge or information sufficient to affirm or deny. |
| 93. Elam took sick days on June 22, July 3, and July 7, for which he was paid. (Elam 226:3-10; 236:13-20, 247:16-20). | Plaintiff admits, but denies that he used those sick days to care for his wife. (James Dep. 119:19-23.) |
| 94. Elam did not request time off to care for his wife at any time after June 22, 2015. (Elam 282:10-25, 283:2-25). | Plaintiff admits, but denies that he was allowed to request time off to care for his wife. (Elam Dep. 279:15-23.) |
| 95. CVI paid Elam for any sick days that he used. (Elam 226:3-11, 264:9-25, 284:2-4). | Plaintiff admits. |
| 96. Elam used paid sick days to care for his wife in 2011 when she was in a car accident. (Elam 277:25, 278:2-18). | Plaintiff admits. |
| 97. Elam possesses a memorandum dated June 26, 2015, that he received from someone other than Bowry. (Elam 252:16-25, 253:2-6, 272:4-13). | Plaintiff admits. |
| 98. Bowry does not recall drafting this memorandum. (Bowry 128:3-10). | Plaintiff lacks knowledge or information sufficient to affirm or deny. |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 99. The June 26, 2015 memorandum provides:<br><br>You went on to say that Mr. James got here and he is making all these changes. Well Mr. Elam, changes are inevitable, and that is why corporations and governments change employees upon their arrival in office. Do you think I can tell my boss that I will not follow his instructions? As a supervisor, you said you cannot work at nights because you have a sick wife but somehow you were able to be on CV premises looking to find Mr. James in wrongdoings and putting letters under Shareholders' door. Who was looking after your wife, Mr. Elam? I pray she is well with you being at CV last night. It is quite obvious that because recently refused to take directives from Mr. James, you have developed an attitude and a vendetta against him and me. You have gone to several Board members and Shareholders and they have spoken to you. If you cannot adhere to Concourse Village rules and regulation, then CV is not the place for you. (Munsky Aff., Ex. 7). | Plaintiff admits. |
| 100. CVI questioned Elam about whether he distributed CVI materials to a contractor, which was not permitted, as contractors are supposed to use their own materials. (Elam 135:8-25, 136:2-24). | Plaintiff admits that Concourse questioned him about whether he distributed Concourse materials to a contractor, but denies that he ever distributed such materials. (Elam Dep. 136:22.) |
| 101. Elam placed letters under the doors of shareholders at CVI about this incident. (Elam 143:1-13). | Plaintiff admits. |
| 102. Elam went to CVI for a Board meeting at night to discuss CVI's questioning of his distribution of materials to a contractor. (Elam 141:22-25, 142:2-15, 157:11-16, 249:12-14; Bowry Aff., Ex. 6). | Plaintiff admits that he went to Concourse for a Board meeting at night, but denies that he did so to discuss Concourse's questioning of his distribution of materials to a contractor. (Elam Decl. ¶ 73-74.) |

| **Defendants' Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 103. The June 26, 2015 memorandum addresses various issues relating to Elam's work performance, including his insubordination, lack of accountability for materials in the stockroom, and leaving work without notification (Munsky Aff, Ex. 7). | Plaintiff admits. |
| 104. Henry knew about Elam's wife's medical condition, and that Elam's wife had an aide during Elam's work hours. (Elam 262:20-22, Henry 113:8-9). | Plaintiff admits that Henry knew about Plaintiff's wife's medical condition, but denies that the aide was always available during Elam's work hours. (Elam 150:21-24.) |
| 105. Elam claims that James was also "rude" to other workers at Concourse, but he does not allege that James behaved this way because of the other workers' association with a disabled individual. (Elam 224:7-25, 225:2-6). | Plaintiff admits. |
| 106. On July 2, 2015, Elam contacted a Human Resources representative at WinnCompanies, a member of Winn WB Management Company LLC. (Amended Complaint ¶ 28; Henry Aff. ¶16). | Plaintiff admits. |
| 107. The name of the Human Resources representative is Christina Verney. (Henry Aff. ¶16). | Plaintiff admits. |
| 108. During their phone call, Elam expressed his belief that his suspension was unwarranted. (Elam 240:2-6, 241:17-21, 242:7-18, 254:23-25). | Plaintiff admits. |
| 109. After Elam's call, Verney and her supervisor, Lorraine Witunski ("Witunski"), recommended to Henry that Elam be paid for his time on suspension. The basis for their recommendation was that it is the general practice of WinnCompanies to pay employees while on suspension. (Verney 76:7-20, 82:8-83:23). | Plaintiff admits that Verney recommended to Henry that Elam be paid for his time on suspension, but denies that the basis for the recommendation was that it is Winn's general practice to pay employees while on suspension. (Verney Dep. 82:17-20.) |

| Defendants' Alleged Material Facts | Plaintiff's Response |
|---|---|
| 110. Elam cannot identify any need to take leave under the FMLA that CVI denied. (Elam 264:21-25). | Plaintiff denies. (Elam Decl. ¶ 11; Elam Dep. 277:25–278:4, 278:13-14.) |
| 111. Elam did not request FMLA leave. (Elam 285:13-16, 286:8-10). | Plaintiff denies. (Elam Dep. 285:13-16, 286:8-10.) |
| 112. CVI granted other employees FMLA leave and leave to care for family members without reprisal. (James 52:2-9, 54:5-23; Henry Aff. ¶20). | Plaintiff denies. (James Dep. 54:9-25.) |
| 113. CVI posted information about the FMLA on the Property, in the room in which employees punch their time cards. (Henry 109:11-18, 119:25, 120:2-4). | Plaintiff denies. (Elam Decl. ¶ 15; Elam Dep. 276:21–277:2; Bowry Dep. 66:21–67:8.) |

Dated: New York, New York
       October 14, 2016

Respectfully submitted,

*[signature]*

Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
**THE HARMAN FIRM, LLP**
220 Fifth Avenue, Suite 900
New York, New York 10001
212.425.2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*