**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------✕

WALTER ELAM,

       *Plaintiff,*

   *v.*                                   **15 CV 7215**

CONCOURSE VILLAGE, INC., ANTHONY JAMES,
individually, and LETITIA BOWRY, individually,

       *Defendants.*

------------------------------------------------------------------------✕

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND TO PRECLUDE CERTAIN EVIDENCE

---

Walker G. Harman, Jr.
Edgar M. Rivera
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, New York 10001
212.425.2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS .................................................................................. 3

STANDARD ....................................................................................................... 7

ARGUMENT ....................................................................................................... 7

    *POINT I. PLAINTIFF'S COUNSEL DID NOT VIOLATE RULE 4.2 OF THE NEW YORK RULES OF PROFESSIONAL CONDUCT.* ...................................................... 8

    A.   The Witnesses are not "parties" for the purposes of Rule 4.2(a). ................................................ 8

       1.   An individual is not a party to an action against a corporate entity solely by virtue of being a board member of that corporation. ................................................ 9

       2.   Defendants' arguments rely on a mischaracterization of Morrison ................................................ 13

    B.   Defendants' counsel never represented the Witnesses ................................................ 14

    C.   Even assuming that the Witnesses were represented parties, Plaintiff's counsel did not know they were when they contacted them and, thus, did not violate or run afoul of the purposes of Rule 4.2(a) ................................................ 15

    *POINT II. DISQUALIFICATION IS INAPPROPRIATE HERE* ................................................ 18

    *POINT III. EVIDENCE SHOULD NOT BE EXCLUDED.* ................................................ 19

    CONCLUSION ................................................ 21

## TABLE OF AUTHORITIES

**Cases**

*AIU Ins. Co. v. Robert Plan Corp.*
  17 Misc. 3d 1104(A), 851 N.Y.S.2d 56 (Sup. Ct. 2007) ......................................................... 14

*Arons v. Lalime*
  No. 6:94 Civ. 7618CJSH, 1998 WL 912034 (W.D.N.Y. Oct. 8, 1998) ................................... 19

*Best Western Intern v. CSI Intern. Co.*
  No. 94 Civ. 0360, 1995 WL 505565 (S.D.N.Y. Aug. 25, 1995) ...................................... 18, 19

*Curley v. Cumberland Farms*
  134 F.R.D. 77 (D.N.J. 1990) ....................................................................................................... 12

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*
  82 F. Supp. 2d 119 (S.D.N.Y. 1999) ........................................................................................... 8

*Martin v. All Care Registry, Inc.*
  822 F. Supp. 977 (E.D.N.Y. 1993) ......................................................................................... 9, 11

*Mendez v. Hovensa, L.L.C.*
  Civil No. 02-0169, 2008 WL 906768 (D.V.I. March 31, 2008) .................................... 11, 12, 13

*Miano v. AC & R Advert., Inc.*
  148 F.R.D. 68 (S.D.N.Y. Mar. 4, 1993) ................................................................................. 9, 16

*Miano v. AC & R Advert., Inc.*
  834 F. Supp. 632 (S.D.N.Y. 1993) ............................................................................................... 9

*MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*
  764 F. Supp. 712 (D. Conn. 1991) ............................................................................................. 18

*Morrison v. Brandeis Univ.*
  125 F.R.D. 14 (D. Mass. 1989) ...................................................................................... 8, 10, 13

*Niesig v. Team I*
  76 N.Y.2d 363, 558 N.E.2d 1030 (1990) ......................................................... 1, 7, 8, 9, 14, 17

*Norville v. Staten Island Univ. Hosp.*
  196 F.3d 89 (2d Cir. 1999) ........................................................................................................... 6

*Patterson v. Balsamico*
  440 F.3d 104 (2d Cir. 2006) ................................................................................................... 2, 20

*Pauling v. Sec'y of Dep't of Interior*
  No. 95 Civ. 8408 (DLC), 1997 U.S. Dist. LEXIS 16333 (S.D.N.Y. Oct. 21, 1997) ...... 9, 12, 15

*S.E.C. v. Lines*
  669 F. Supp. 2d 460 (S.D.N.Y. 2009) ................................................................................... 16, 17

*Scott v. Chipotle Mexican Grill, Inc.*
  No. 12 Civ. 08333 (ALC) (SN), 2014 WL 4852063 (S.D.N.Y. Sept. 29, 2014)............ 8, 14, 17

*Serin v. Northern Leasing Systems, Inc.*
  No. 7:06 Civ. 1625, 2010 WL 6501661 (S.D.N.Y. Oct. 26, 2010) ............................................ 20

*Stern v. Trustees of Columbia Univ. in City of N.Y.*
  131 F.3d 305 (2d Cir. 1997) ......................................................................................................... 7

*Tolbert v. Smith*
  790 F.3d 427 (2d Cir. 2015) ......................................................................................................... 6

*Trimper v. Terminix Intern. Co., Ltd. Partnership*
  82 F. Supp. 2d 1 (N.D.N.Y. 2000) ............................................................................................. 19

*Vegetable Kingdom, Inc. v. Katzen*
   653 F. Supp. 917 (N.D.N.Y. 1987) ........................................................................... 18
*White v. Pacifica Found.*
   973 F. Supp. 2d 363 (S.D.N.Y. 2013). ................................................................... 11
*Zahorik v. Cornell Univ.*
   729 F.2d 85, 93 (2d Cir. 1984) ................................................................................. 6

**Other Authorities**
New York State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 08-453 at 3 (2008) ................... 9

**Rules**
22 NYCRR 1200.0 Rule 1.3 ........................................................................................ 15
22 NYCRR 1200.0 Rule 4.2 ................................................................. 1, 2, 7, 8, 9, 10, 13, 14, 16
FED. R. CIV. P. 26 ................................................................................................ 3, 8, 20, 21
FED. R. CIV. P. 32 ...................................................................................................... 13
FED. R. EVID. 802 ....................................................................................................... 21

Plaintiff Walter Elam ("Plaintiff" or "Elam") respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Disqualify Plaintiff's Counsel and to Preclude Certain Evidence.

## PRELIMINARY STATEMENT

Defendants Concourse Village Inc. ("Defendant Concourse" or "Concourse"), Letitia Bowry ("Defendant Bowry" or "Bowry"), and Anthony James ("Defendant James" or "James") (collectively, "Defendants") bring this motion to disqualify Plaintiff's counsel less than eight weeks before this case is scheduled for trial. Defendants claim that Plaintiff's counsel violated Rule 4.2(a) of the New York Rules of Professional Conduct (the "Rules"), 22 NYCRR 1200.0 Rule 4.2(a), which prohibits attorneys from communicating with represented parties about the subject matter of a lawsuit, by taking calls in June 2016 from Leroy Meyers ("Meyers") and Constance Hendricks ("Hendricks") (collectively, the "Witnesses"), who are members of Concourse's board of directors. Plaintiff's counsel admits that these communications occurred, but denies that any rule was violated in doing so.

To show a violation of Rule 4.2(a), Defendants must prove by a preponderance of the evidence that: (1) the Witnesses were parties in the action; (2) the Witnesses were represented by counsel in the action; and (3) Plaintiff's counsel knew that the Witnesses were represented when it took their calls. Defendants cannot show that the Witnesses fall into any of the three categories of prohibited individuals articulated in Comment 7 of Rule 4.2(a) and in *Niesig v. Team I*, 76 N.Y.2d 363, 558 N.E.2d 1030 (1990). Even if Defendants could demonstrate that the Witnesses were part of any of these categories, it cannot be inferred from the circumstances around the communications that Plaintiff's counsel was actually aware that the Witnesses were represented. First, board members are not automatically parties in a suit where the corporate

1

entity is a party.  Second, Defendants' counsel never identified themselves as representing the Witnesses.  Lastly, the Witnesses told Plaintiff and Plaintiff's counsel repeatedly that they were not represented by attorneys in the matter and that neither Defendants' counsel nor Defendant Bowry was communicating with them about the action.

Further, disqualification is an extreme measure that only should be considered where the moving party can show that the non-moving party learned of attorney-client privileged communication.  Defendants have offered no evidence that the Witnesses shared any attorney-client privilege communication.

Finally, none of the factors enumerated in *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006), which are used to determine whether to exclude evidence upon the finding of a violation of Rule 26 of the Federal Rules of Civil Procedure, support the exclusion of Meyer's Declaration or Hendricks' testimony.  Defendants' counsel should have been aware of anticipated testimony from their own client's board members, especially since the anticipated testimony is alluded to in the First Amended Complaint and was discussed at length during Elam's deposition.

Defendants are quick to urge the Court to disqualify Plaintiff's counsel—as disqualification would require the matter to be stayed for many months before Plaintiff could obtain new counsel—but ultimately their motion is unsupported by the facts or the law.[1]  The Court should see through this last-ditch effort to prevent the timely resolution of Plaintiff's claims and deny Defendants' motion in its entirety.

---

[1] This matter is scheduled for trial on April 24, 2017.  Shortly after the trial was scheduled, Defendants' counsel informed Plaintiff's counsel that Bowry was ill and could not appear for a trial and that, consequently, the trial would need to be adjourned.  When Plaintiff requested documentation regarding Bowry's medical issues, Defendants withdrew their request.  Defendants next sought to delay the trial of this action by making a frivolous motion to disqualify Plaintiff's counsel.  Defendants clearly seek to delay the scheduled trial for any reason, even a manufactured one.  Harman Decl. ¶¶ 4–5.

## STATEMENT OF FACTS

This Statement of Facts is based on the Declaration of Walker G. Harman, Jr. ("Harman Decl."), dated March 20, 2017, and accompanying exhibits; the Declaration of Edgar M. Rivera ("Rivera Decl."), dated March 20, 2017, and accompanying exhibits; the Declaration of Walter Elam ("Elam Decl."), dated March 13, 2017, Rivera Decl. ¶ 6, Ex. H; and the Declaration of Leroy Meyers ("Meyers Decl."), dated June 17, 2016, Rivera Decl. ¶ 24, Ex. L.  The Harman Firm, LLP, represents Plaintiff in the above-captioned matter.

Concourse is a residential cooperative apartment complex with 1,872 units.  Harman Decl. ¶ 3, Ex. A, Affidavit of Letitia Bowry ("Bowry Aff.") ¶ 2.  Each unit is owned by individual owners, and the building is owned by Concourse, which hires a management company to manage Concourse's day-to-day operations.  Concourse has a 13-member Board of Directors (the "Board").  Harman Decl. ¶ 9, Ex. B, Deposition of Letitia Bowry ("Bowry Dep.") 31:7–12.  Any Concourse resident can run for the Board, regardless of whether the resident is an owner.  Bowry Dep. 31:24–25.  Concourse does not pay Board members any wages, benefits, dividends or compensation or any kind; the position is entirely voluntary.  Bowry Dep. 33:3–9.  No individual Board member can make a decision that binds the company, as the Board as a whole must vote.  Meyers Decl. ¶¶ 8–11.

The president of the Board—who, at all times relevant hereto, was Bowry—is responsible for Concourse's daily operations and for speaking with management.  Bowry Dep. 32:24–25.  The Witnesses were members of the Board around the time of Elam's termination.  Elam Decl. ¶ 2.  Elam testified that Hendricks provided him with a letter written by Bowry (the "Letter"), which contained hurtful statements about Elam's wife's disabilities.  Harman Decl. ¶ 20, Ex. F, Deposition of Walter Elam ("Elam Dep."), 252:21–25.  Bowry denied any memory of

writing the Letter, but would not state definitively whether or not she wrote it.  Bowry Dep. 126:3–21, 128:2–25.  On July 13, 2015, when Elam was terminated, Meyers defended him, stating that his termination was improper because it did not follow Concourse's usual termination procedures.  Elam Dep. 251:18–19.  Bowry attested that it did.  Bowry Aff. ¶ 14.

In and around May 2016, Elam contacted Edgar Rivera ("Rivera"), the associate attorney assigned to this case, saying that several Board members had contacted Elam regarding the settlement of this matter.  Rivera Decl. ¶ 3; Elam Decl. ¶¶ 3, 5.   Rivera immediately contacted Defendants' counsel, Clifton Budd & DeMaria, LLP ("CBD"), to inform CBD of these conversations and requested that CBD instruct Board members not to discuss settlement with Elam directly.  Rivera Decl. ¶ 4.  As such, CBD's office was made aware of Board members' attempted communications with Elam.  *Id*.  At no point in the litigation did Defendants' counsel ever state that they represented the Witnesses.  Harman Decl. ¶ 20.   Nor were the Witnesses identified on Defendants' Initial Disclosures, Amended Initial Disclosures, or trial witness list.[2]

After Elam's deposition, Elam contacted Plaintiff's counsel, stating that the Witnesses wanted to speak with his attorney.  Rivera Decl. ¶¶ 5–6; Elam Decl. ¶¶ 3, 6–7.  The Witnesses told Elam that they had not had any contact with Defendants' attorneys and that Bowry had not shared any information with them about the case.  Elam Decl. ¶¶ 3–4, 7.  The Witnesses also affirmed definitively that they were not represented by any attorneys related to this matter. Rivera Decl. ¶¶ 16–17; Elam Decl. ¶ 4.  This is consistent with Defendants' counsel's needing to ask Elam during his deposition whether Meyers was even still alive.  Elam Dep. 252:4.

---

[2] In Defendants' Initial Disclosures and Amended Initial Disclosures, Defendants identified the following individuals as likely to have discoverable information: Elam; Bowry and James (the current Board president and a Concourse supervisor, respectively); a Human Resources Coordinator for a non-party company; a former Concourse general manager; and a current Concourse general manager.  Rivera Decl. ¶ 9, Ex. I, Defendants' Initial Disclosures; Rivera Decl. ¶ 9, Ex. J, Defendants' Amended Initial Disclosures.  Defendants' trial witness list included Bowry and James; Elam and his wife, Monica Elam; Sherill Henry; Christina Verney; Maurice Wright; Calvin Reed; Gerald Turner; and Lillian Somersle.  Rivera Decl. ¶ 9, Ex. K, Joint Pre-Trial Order.

Plaintiff's counsel researched the issue of whether Rule 4.2(a) prohibited an attorney from contacting board members of a corporate defendant in a civil rights matter and contacted the New York State Bar Ethics Hotline, and it appeared that the Witnesses were not parties in the action. Rivera Decl. ¶ 10. Plaintiff's counsel did not believe that the Witnesses were represented by anyone in the matter. Rivera Decl. ¶ 11. Before asking each of the Witnesses what they wanted to tell Plaintiff's counsel, Rivera repeated to the Witnesses that he represented Elam in his lawsuit against Defendants Concourse, Bowry, and James, and asked again whether the Witnesses were represented in this action, which they denied. Rivera Decl. ¶¶ 14–17.

Hendricks told Plaintiff's counsel that she knew Elam to be an excellent employee; that Bowry had given her and other Board members the Letter, which she gave to Elam; that she believed the entire Board was supposed to be involved in the decision to terminate a Concourse employee, such as Elam; and that Elam's termination was decided without the entire Board present. Rivera Decl. ¶ 20.

In a separate conversation, Meyers told Plaintiff's counsel that Elam could only be terminated with the entire Board's consent; that Bowry terminated Elam without the Board's collective consent; that he (Meyers) had raised the issue of Elam's termination to Bowry, who responded only that she could terminate "whomever she wanted"; and that he knew Elam to be an exemplary employee. Meyers Decl. ¶ 17; Rivera Decl. ¶ 23.

In October 2016, five months later, Meyers again approached Elam, making a specific offer to settle this matter. Rivera Decl. ¶ 26. Plaintiff's counsel immediately informed Defendants' counsel that any settlement discussion should be made through counsel. Rivera Decl. ¶ 27. Plaintiff's and Defendants' counsel did not discuss any communications between Plaintiff's counsel and the Witnesses. Rivera Decl. ¶ 29. Defendants' counsel never responded

to any of Plaintiff's settlement demands.  It appeared that Meyers believed that trying to settle the matter was in Concourse's best interest, while Bowry—the only agent of Concourse apparently communicating with Defendants' counsel—did not think it was in hers, as she, by virtue of being an individual defendant, would be individually and severally liable for any settlement payment.

On February 28, 2017, Plaintiff's counsel informed Defendants' counsel that these conversations had taken place and asked whether Defendants' counsel intended to represent the Witnesses at trial.  Harman Decl. ¶¶ 6–7.  Plaintiff's counsel informed Defendants' counsel that to do so would be improper, as the Witnesses' interests were at odd with Defendants' interests, making it impossible for Defendants' counsel to zealously advocate for both their clients and the Witnesses.  Harman Decl. ¶ 8.  Defendants' counsel did not state whether they intended to represent the Witnesses.  Harman Decl. ¶ 12.

On March 1, 2017, Plaintiff's and Defendants' counsel had a follow-up call, wherein Defendants' counsel did not deny that they had never communicated with the Witnesses. Harman Decl. ¶¶ 13–14.  Defendants' counsel only stated that they represented Concourse. Harman Decl. ¶ 15.  When asked directly whether they represented the Witnesses, Defendants' counsel stated that they do not represent them individually.  Harman Decl. ¶ 16.  When asked if they represent the Witnesses in any capacity, Defendants' counsel stated that they represented them only with respect to their capacity as directors of Concourse.[3]  Harman Decl. ¶ 17.

---

[3] This is a discrimination case.  There is no claim in this action arising under business organization law.  Besides testifying that Plaintiff was an "exemplary employee" and an "excellent worker," the Witnesses are expected to testify as to whether Plaintiff's termination was irregular, which, if true, would permit the inference of pretext (Harman Decl. ¶ 10, Ex. C, First Amended Complaint ¶ 39).  *Tolbert v. Smith*, 790 F.3d 427, 438 (2d Cir. 2015) ("These irregularities, when combined with Principal Smith's alleged remarks, are sufficient to establish a prima facie case of discrimination."); *Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984) ("Departures from procedural regularity, such as a failure to collect all available evidence, can raise a question as to the good faith of the process where the departure may reasonably affect the decision."); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 97 (2d Cir. 1999) (evidence that the employer "departed from its usual employment practices and

On March 2, 2017, Plaintiff's and Defendants' counsel had another follow-up call regarding Plaintiff's counsel's conversations with the Witnesses and whether Defendants' counsel intended to represent the Witnesses at trial.  Harman Decl. ¶ 18.  Defendants' counsel's statements were the same as those made during the March 1 call.  Harman Decl. ¶ 19.  To date, Defendants' counsel has not taken a position on whether they represent the Witnesses; they have only repeated that, regardless of the Witnesses' representation, Plaintiff's counsel could not have *ex parte* conversations with the Witnesses.

## STANDARD

Defendants move to disqualify Plaintiff's counsel for allegedly violating Rule 4.2(a).  When determining whether there was a violation of ethical rules, courts do not apply the principles of statutory constructions; courts need not simply take the Rules as they are written or interpreted to effectuate the legislative intent.  *Niesig*, 76 N.Y.2d  at 369.  The Rules are guidelines to be applied "with due regard for the broad range of interests at stake."  *Id*.  When courts find an area of uncertainty, they must use the judicial process to make their own decisions in the interest of justice to all concerned.  *Id*.

## ARGUMENT

Plaintiff's counsel did not violate Rule 4.2(a).  Even if the Court were to find a violation—though it should not, as none exists—disqualification would be an inappropriate remedy.  Further, Plaintiff fulfilled his obligations to Defendants under Rule 26 of the Federal Rules of Civil Procedure.  Therefore, Defendants' Motion to Disqualify Plaintiff's Counsel and Preclude Certain Evidence must be denied.

---

procedures" in dealing with the plaintiff supports an inference of discrimination); *Stern v. Trustees of Columbia Univ. in City of N.Y.*, 131 F.3d 305, 313 (2d Cir. 1997) (the fact that the university deviated from its usual practices was evidence of impermissible discrimination).  Hendricks will also testify that Bowry gave her a copy of the Letter.

## POINT I.
## PLAINTIFF'S COUNSEL DID NOT VIOLATE RULE 4.2 OF THE NEW YORK RULES OF PROFESSIONAL CONDUCT.

Rule 4.2(a) provides:

In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

22 NYCRR 1200.0 Rule 4.2(a). An analysis of a potential violation of Rule 4.2(a) turns on whether the moving party can show by a preponderance of the evidence that: (1) the individual was a party; (2) the individual was represented in the matter; and (3) the attorney knew that the individual was represented at the time of the communication. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 119, 124 (S.D.N.Y. 1999) (following a three-part test to determine whether Rule 4.2's predecessor was violated); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 08333 (ALC) (SN), 2014 WL 4852063, at *2 (S.D.N.Y. Sept. 29, 2014) (requiring moving party to demonstrate knowledge that the party was represented).

### A. The Witnesses are not "parties" for the purposes of Rule 4.2(a).

Defendants only argue that the Witnesses are "parties" within the meaning of Rule 4.2(a) because the Witnesses are members of the Board. Relying on *dicta* from *Morrison v. Brandeis Univ.*, 125 F.R.D. 14, 16 (D. Mass. 1989), Defendants incorrectly conclude that all board members bind a corporation in all contexts and, therefore, that the Witnesses—only as Board members—are parties. Defs.' Mem. of Law, at 7. This argument fails for two reasons. First, Defendants misstate Comment 7 of Rule 4.2(a) and the holding in *Niesig* and, therefore, arrive at the opposite conclusion. Second, Defendants completely misconstrue the *Morrison* holding, which actually supports Plaintiff's position that the Witnesses are not parties.

### 1. *An individual is not a party to an action against a corporate entity solely by virtue of being a board member of that corporation.*

First, contrary to Defendants' arguments, an individual is *not* a party to an action solely by virtue of being a board member.  New York State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 08-453 at 3 (2008).  Courts have long cautioned that such a bright line test would be too broad.  *See Niesig*, 76 N.Y.2d at 371 (rejecting the "control group" test, which states that board members, among other positions, are automatically "parties").  In *Niesig*, the New York Court of Appeals adopted a test that "would prohibit direct communication by adversary counsel with those officials, but only those, who have the legal power to bind the corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer, or any member of the organization whose own interests are directly at stake in the representation."  *Niesig*, 76 N.Y.2d at 374.  This holding is reflected in the specific language of Comment 7 of Rule 4.2(a), which prohibits only those communications with a constituent of the organization is a party if he or she: (1) supervises, directs or regularly consults with the organization's lawyer concerning the matter; (2) has the authority to obligate the organization with respect to the matter; or (3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.  Rule 4.2(a), cmt. 7; *see, e.g., Miano v. AC & R Advert., Inc.*, 148 F.R.D. 68 (S.D.N.Y.), *as amended* (Mar. 4, 1993), *adopted,* 834 F. Supp. 632 (S.D.N.Y. 1993).  Thus, determining whether a board member is a party is far from "automatic."  On the contrary, it is a fact-intensive inquiry that depends on the facts and primary issues of the case.  *See, e.g., Pauling v. Sec'y of Dep't of Interior*, No. 95 Civ. 8408 (DLC), 1997 U.S. Dist. LEXIS 16333, at *5 (S.D.N.Y. Oct. 21, 1997) (citing *Niesig*, 559 N.Y.S.2d at 498); *Martin v. All Care Registry, Inc.*, 822 F. Supp. 977, 978 (E.D.N.Y. 1993).

The first step to determine whether a "constituent" is a party is to identify the primary issue of the case.  Here, the primary issue in this case is whether Plaintiff was terminated because of his association with a person with a disability and in retaliation for requesting leave under the FMLA, or if he was terminated for the non-discriminatory reasons advanced by Defendants.  The focus at trial will be on whether Defendants unlawfully discriminated against Plaintiff in terminating him, and, if so, whether the decision to terminate would not have been made but for the discriminatory motive.  *See Morrison*, 125 F.R.D. at 18 (holding that plaintiff's counsel would not violate rule for communicating *ex parte* with defendant's employees in a discrimination case).  A determination of whether Defendants' proffered non-discriminatory reasons were the actual reasons for the termination or pretext for unlawful discrimination will be crucial.  *See id*.  The evidence on these issues is, for the most part, unknown to Plaintiff and possessed by those who participated in the decision-making process, i.e., Concourse.  *See id*.

The next step is to determine whether the "constituent" falls under any of the three enumerated categories.  Rule 4.2(a), cmt. 7.  Defendants have all but conceded that the Witnesses do not fall under the first and second factors.  They have not provided any argument or evidence to establish that the Witnesses "supervise, direct, or regularly consult" with CBD.  The Witnesses repeatedly denied the same to Elam and to Plaintiff's counsel.  Therefore, Defendants cannot satisfy the first factor.

Nor do Defendants argue that the Witnesses have the authority to obligate Concourse with respect to Plaintiff's termination.  The phrase "authority to obligate" corresponds neatly with principles of agency law, under which "a statement by an agent is not admissible on evidence as an admission of the principal unless it is with reference to a matter and on an occasion when he or she is authorized to speak."  *Mendez v. Hovensa, L.L.C.*, Civil No. 02-0169,

2008 WL 906768, at *5–6 (D.V.I. March 31, 2008).  For a statement of an agent to constitute an admission on the part of the principal, the agent must have been given specific authority to speak on behalf of the principle; the authority to make statements of fact does not of itself include authority to make statements admitting liability because of such facts.  *Id*. at *5.  The nature and extent of the authority must be inferred from the evidence and acanot be based on the out of court declaration of the alleged agent.  *Id*. at *6.  Independent proof of the existence of the agency and its scope must be shown.  *Id*.  Defendants have not provided any proof that either Meyers or Hendricks had been authorized to speak on the subject of Plaintiff's termination or the events leading up to it by Defendant Concourse.  It is undisputed that neither Meyers nor Hendricks acting alone could terminate Plaintiff or prevent Plaintiff's termination.  *Martin*, 822 F. Supp. at 978  (finding no violation where contacted individuals could not terminate plaintiff). In fact, Bowry and Sherill Henry (Concourse's former general manager) testified that the Board terminated Plaintiff and it alone had the authority to make decisions.[4]  *See* Bowry Dep. 91:13–18; Bowry Aff. ¶ 14; Harman Decl. ¶ 11, Ex. E, Deposition of Sherill Henry ("Henry Dep.") 48:8–49:7, 140:16–19.  Nothing in the record suggests that any Board member—besides Bowry, as Board president—had the authority to obligate Defendant Concourse in the primary issue in this matter. Therefore, the Witnesses do not fall under the second category.

Defendants seem to argue that the Witnesses fall under the third category—constituents "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability"—solely by virtue of the Witnesses membership on the

---

[4] Notably, it is impossible for either Meyers or Hendricks to be defendants in this matter.  The ADA does not allow individual liability, and it is undisputed that the Witnesses had no involvement in Plaintiff's request for FMLA leave.  Further, it is undisputed that neither of the Witnesses received any wages, benefits, compensation, or dividends from Concourse, that they were not able to make personnel decisions or terminate employees on behalf of Concourse, and that they did not have the power to affects the terms and conditions of employment of Concourse's employees.  Therefore, they cannot be employers under the NYCHRL.  *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 375–76 (S.D.N.Y. 2013).

Board.  Defendants are incorrect.  "Unless the person's act or omission is believed to be so central and obvious to a determination of corporate liability that the person's conduct may be imputed to the corporation," *ex parte* interviews are not prohibited.  *Mendez*, 2008 WL 906768 at *2 (citing *Curley v. Cumberland Farms*, 134 F.R.D. 77 (D.N.J. 1990)).  "If it is not reasonably likely that the person may be a central actor for liability purposes, nothing in [Rule 4.2(a)] precludes informal contact…."  *Id.*  The burden rests on the corporation to show that the constituent's conduct may be imputed."  *Id.* at 3.  The question is not whether a witness's averment tends to prove plaintiff's case, but whether the witness's conduct is for which the plaintiff seeks to hold the corporation liable.  *Id.* at *4.  Defendants have not provided any evidence that the Witnesses' acts or omissions related to the matter may be imputed to Concourse.  The Witnesses will testify as to what they witnessed.  Hendricks will testify that: (1) Bowry gave her the Letter; (2) Elam was a good employee; and (3) Bowry did not follow Concourse's rules with regards to Elam's termination.  Meyers will testify that: (1) Elam was a good employee; and (2) Bowry did not follow Concourse's rules with regards to Elam's termination.  None of this expected testimony is imputable to Concourse; the jury will be free to decide whether the Witnesses' testimony is more reliable than Defendants' witnesses on these issues.  Where a witness's actions are not imputable to the defendant in the context of the suit, the witness is not a party within the meaning of Rule 4.2(a).  *See Pauling*, 1997 U.S. Dist. LEXIS 16333 at *5 (S.D.N.Y. Oct. 21, 1997) (holding that a witness was not a party where neither party suggested that her actions as defendant's employee were attributable to defendant in this context.).  Rule 4.2(a) was not intended to block the flow of prejudicial information.  *Mendez*, 2008 WL 906768 at *3.  Nor was it to prevent "routine informal interview of such

12

persons who are not believed to be central to the case," which are a "staple of good, ethical trial preparation." *Id*. at *3. As such, the Witnesses do not fall under the third factor.

Accordingly, Defendants have not shown that the Witnesses fall under any category; therefore, the Witnesses are not parties.

### 2. *Defendants' arguments rely on a mischaracterization of* **Morrison.**

Defendants completely mischaracterize *Morrison*. In *Morrison*, the court rejected the "control test," which prohibits communications with anyone whose testimony would fall under Rule 32(a)(1) of the Federal Rules of Civil Procedure:

> The theory is that since statements of officers, directors and managing agents can bind the corporation, these persons are as much 'parties' for purposes of DR 7-104(A) as the corporation itself, and, thus, interviews of these persons by opposing counsel without the consent of the corporation's attorneys should be prohibited.

*Morrison*, 125 F.R.D. at 16. The court in *Morrison*, rejecting the "control test," opted for a "case-by-case balancing test," which is for all intents and purposes the same as the test under Comment 7 of Rule 4.2(a). *Id*. at 18. As such, the only argument that Defendants advance—that all Board members are parties—is based on a mischaracterization of the law.

The court in *Morrison* ultimately authorized the plaintiff's attorney to interview defendants' committee members without prior notice to or consent from defendants' counsel. *Morrison*, 125 F.R.D. at 19. In deciding in the plaintiff's counsel's favor, the court noted:

> Many, if not all, of the persons sought to be interviewed will have evidence favorable to the plaintiff in that they were in favor of granting tenure to the plaintiff. They will most likely be called as witnesses by the plaintiff at trial. Unless plaintiff's counsel is authorized to contact these witnesses without notice to [defendant's] counsel, [plaintiff] will be in a position of not being able to even talk to her witnesses prior to a deposition or trial without [defendant's] counsel being present. Unless authorization is given, two important functions which counsel traditionally play in litigation would be precluded. The first is the function of interviewing witnesses without the presence of opposing counsel in order to gain information…. The second is the function of preparing witness

13

> favorable to a client before testimony at a deposition or a trial without the presence of opposing counsel. In short, without authorization, plaintiff's counsel's ability to prepare her case in the traditional manner is substantially circumscribed.

*Morrison*, 125 F.R.D. at 19. This District has long given significant weight to the "search for truth" and the necessity of interviewing witnesses without the presence of opposing counsel. *Scott*, 2014 WL 4852063 at *4. As in *Morrison*, the same search for truth applies here.

Defendants' additional reliance on *AIU Ins. Co. v. Robert Plan Corp.*, 17 Misc. 3d 1104(A), 851 N.Y.S.2d 56 (Sup. Ct. 2007), is misplaced. First, *AIU* is inapposite, as it deals with plaintiff's counsel's threatening the defendant's board of directors that they would be subject to legal proceedings if they undertook actions that might be deemed a breach of their fiduciary duty to the defendant's creditors. *Id.* at *14. Second, the *AIU* court did not analyze Rule 4.2(a) at all, let alone Comment 7, as to whether the board members were parties. As such, *AIU* offers no guidance here.

Accordingly, the Witnesses were not parties under Rule 4.2(a).

**B. Defendants' counsel never represented the Witnesses.**

Defendants' counsel, CBD, never represented the Witnesses; therefore, even if they were parties, communication with them is not prohibited under Rule 4.2(a). It is well established that, although a corporate employee may be a "client" for purposes of attorney-client privilege, he or she is not necessarily a "party" for purposes of Rule 4.2(a). *Niesig*, 76 N.Y.2d at 372. Nowhere in Defendants' memorandum of law or accompanying Declaration of Carla B. Gunther do Defendants' counsel claim to have represented the Witnesses, let alone indicate that CBD represented them at the time Plaintiff's counsel communicated with them. Nor does CBD allege that they contacted the Witnesses, met with them, spoke with them, were retained by them,

14

shared information with them, provided them legal advice, or otherwise communicated with them in any way that could could have created an attorney-client relationship.[5]  The Witnesses told Elam that they had not had any contact with CBD and that Bowry had not shared with them any information about the case.  Elam Decl. ¶¶ 3–4, 7.  The Witnesses also affirmed definitively that they were not represented by any attorneys related to this matter.  Rivera Decl. ¶¶ 16–17; Elam Decl. ¶ 4.  The Witnesses repeated the same to Plaintiff's counsel.  Rivera Decl. ¶¶ 16–17.  This is supported by that Defendants' counsel's asking Elam during his deposition whether Meyers was still alive.  Elam Dep. 252:4.

Further, the absence of a unity of interest between CBD and the Witnesses suggests that the Witnesses are adverse witnesses and not clients.  *See Pauling*, 1997 U.S. Dist. LEXIS 16333, at *2–3 (noting that the defense counsel's cross examination of the at-issue "client" supported that the "client" was an adverse witness).  CBD argued in its Motion for Summary Judgment that Meyers' comments about Elam's termination should be excluded as hearsay.  Harman Decl. ¶ 21, Ex. G, Defendants' Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment.  CBD will have to cross-examine Meyers; Meyers is likely an adverse witness to Defendants and, therefore, cannot be CBD's client.

Accordingly, CBD does not represent the Witnesses.

## C.  Even assuming that the Witnesses were represented parties, Plaintiff's counsel did not know they were when they contacted them and, thus, did not violate or run afoul of the purposes of Rule 4.2(a).

The prohibition on communications with a represented party applies only in circumstances where the lawyer actually knows that the party is represented in the matter to be discussed.  Rule 4.2(a), cmt. 8.  Such knowledge may be inferred from the circumstances.  *Id.*

---

[5] If CBD had represented the Witnesses, such behavior would violate Rule 1.3.

Here, Defendants have not provided any evidence from which it can be inferred that Plaintiff's counsel actually knew that the Witnesses were represented by Defendants' counsel at the time of the conversations in question.

Additionally, Plaintiff's counsel did not do anything that would thwart the purposes of Rule 4.2(a).  Rule 4.2(a) is intended to: (1) prevent situations in which a represented party is taken advantage of through the greater skill of an adversary's attorney; (2) prevent an attorney from circumventing opposing counsel to obtain unwarranted concessions or liability-creating statements or disclosures from a party; (3) preserve the integrity of the attorney-client relationship; (4) prevent the disclosure of protected information, most particularly attorney-client communications; and (5) allow a party in litigation to have access to facts acquired by its adversary, through adequate and timely discovery.  *Miano*, 148 F.R.D. at 75.

First, the Witnesses voluntarily gave Plaintiff's counsel information unsolicited information, so there is no danger that the Witnesses may have been taken advantage of. Second, the Witnesses contacted Plaintiff's counsel themselves, so there is no danger of circumventing opposing counsel.  Third, the Witnesses claimed that they were not represented by any attorney and had had no contact with Defendants' counsel, so there is no danger concerning the preservation of the integrity of the attorney-client relationship.  *See S.E.C. v. Lines*, 669 F. Supp. 2d 460, 466 (S.D.N.Y. 2009) (finding no violation where the SEC did not engage in the communication at issue to try to trick the individual into giving away information crucial to its case).  Fourth, the Witnesses did not provide any attorney-client–privileged communication. Fifth, Plaintiff's counsel timely informed Defendants' counsel of all facts acquired: the parties have the same information heading into trial, and no party has an unfair advantage over the other.

16

Defendants' concerns about Plaintiff's counsel speaking to "vulnerable laypersons" to elicit admissions are overblown. The Court of Appeals in *Niesig* acknowledged the danger of attorney overreaching in *ex parte* interviews, and decided that the issue was not a serious risk where attorneys make "their identity and interest known to interviewees and comport themselves ethically." 76 N.Y.2d at 376. Plaintiff's counsel told the Witnesses, who already knew that Plaintiff's counsel represented Elam in the matter, that they only represented Elam in this action. Rivera Decl. ¶ 14. As such, Plaintiff's counsel's conduct falls under the *Niesig* safe harbor. Defendants, who bear the burden of proof, have provided no evidence that Plaintiff's counsel employed any unethical tactic or "overreached" during its conversations with the Witnesses.

In *S.E.C. v. Lines*, 669 F. Supp. 2d 460 (S.D.N.Y. 2009), the Southern District of New York did not find that the SEC violated Rule 4.2(a) where the represented individual did not assert that (1) he ever sought legal advice from the lawyer in connection with the matter; and (2) he initiated the call to the lawyer and freely provided the at-issue information. *Id.* at 464. Here, the Witnesses complained directly to Plaintiff's counsel that they were not represented, that Bowry had not shared with them information related to the action, and that they did not know what was happening in the litigation. No reasonable factfinder could determine that Plaintiff's counsel was "overreaching" or intended to "trick" the Board members. And, unlike in *Scott v. Chipotle Mexican Grill, Inc.*—where the court determined that Rule 4.2(a) had been violated because it could be inferred from the filing of an opt-in form that the individual was a party— whether the Witnesses were represented could not be so readily determined that Plaintiff's counsel "ignor[ed] the obvious." 2014 WL 4852063 at *3. Defendants' counsel did not even identify Meyers or Hendricks in Defendants' Rule 26 Disclosures. Ex. I; Ex. J.

Accordingly, Plaintiff's counsel did not violate Rule 4.2(a).

## POINT II.
## DISQUALIFICATION IS INAPPROPRIATE HERE.

Disqualification is a drastic remedy; courts have expressed reluctance to disqualify counsel because of concerns regarding the "immediate adverse effect disqualification has on the client separated from his lawyer, the desire to preserve, to the greatest extent possible, … the individual's right to be respected by counsel of his or her choice," and "the awareness that disqualification motions are being made, with increasingly frequency, with purely strategic purposes in mind." *Vegetable Kingdom, Inc. v. Katzen*, 653 F. Supp. 917, 921 (N.D.N.Y. 1987). All of these concerns are applicable here. If Plaintiff's counsel were disqualified, Plaintiff would be deprived of the counsel that he chose, counsel who have litigated this case for approximately two years. Further, Defendants are using this motion solely to delay trial, as evidenced by their prior attempt to delay trial by citing Bowry's alleged "illness," for which her counsel could not provide any medical records. Harman Decl. ¶¶ 4–5.

Courts disqualify counsel who violate Rule 4.2 if the attorney's presence would "taint" the proceedings. To determine whether an attorney or law firm is "tainted," the court must find all of the following: (1) the witness has confidential or privileged information pertaining to trial preparation and strategy; (2) the witness disclosed such information to the attorney; and (3) the attorney's continued representation threatens to "taint" all further proceedings in the case. *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 724 (D. Conn. 1991). Failing to establish any element necessitates the denial of disqualification. *Id.* Here, neither witness had any confidential or privileged information pertaining to trial preparation and strategy; therefore, disqualification is improper. *See Best Western Intern v. CSI Intern. Co.*, No. 94 Civ. 0360, 1995 WL 505565, at *1 (S.D.N.Y. Aug. 25, 1995) (stating that disqualification is

normally inappropriate where an attorney has not "put himself in a position to use the other's side's privileged information.").

The cases Defendants cite disqualifying attorneys are completely inapposite. In *Trimper v. Terminix Intern. Co., Ltd. Partnership*, 82 F. Supp. 2d 1 (N.D.N.Y. 2000), the plaintiff provided an affidavit in which he attested that the defendant's counsel had initiated a conversation wherein he asked plaintiff targeted questions in the hopes of obtaining admissions or privileged information from his adversary's client. *Id.* at *6. In *Best Western Intern. v. CSI Intern. Co.*, the court disqualified a firm after it received three boxes of confidential communications between a witness—who had worked for the opposing party, been interviewed by its attorneys, and been involved in its discussions about the litigation—and the opposing party's lawyers. 1995 WL 505565, at *1. In *Arons v. Lalime*, No. 6:94 Civ. 7618CJSH, 1998 WL 912034, at *7 (W.D.N.Y. Oct. 8, 1998), the court disqualified the attorney after he gave the opposing party legal advice.

Accordingly, disqualifying Plaintiff's counsel is inappropriate here.

## POINT III.
## EVIDENCE SHOULD NOT BE EXCLUDED.

Defendants argue that Plaintiff should be precluded from (1) presenting Meyers' Declaration, and (2) having Hendricks testify for violating Rule 26 of the Federal Rules of Civil Procedure.

With respect to Meyers' Declaration, the allegations substantiated by the declaration had been on record since the pleadings were filed, and Plaintiff testified about these allegations during his deposition, and Defendants have the declaration.[6] As such, Plaintiff obtains no

---

[6] Plaintiff offered to stipulate not to use the Meyer's declaration at trial to avoid this motion practice, but Defendants' counsel refused to agree to anything short of striking both witnesses from Plaintiff's witness list. Harman Decl. ¶ 22. Oddly, Defendants now only move to exclude Meyer's declaration.

advantage over Defendants by using Meyers' Declaration in the proceedings, whether for impeachment purposes or under any exemption or exception to Rule 802 of the Federal Rules of Evidence's prohibition against hearsay.

With respect to Hendricks, contrary to Defendants' argument, Rule 26 does not require a party to supplement any automatic disclosures where "the additional or corrective information has [] otherwise been made known to the other parties during the discovery process…." FED. R. CIV. P. 26(e)(1)(A).  Here, Elam mentioned Hendricks in no less than 12 instances during his deposition and testified that Hendricks gave him a copy of the Letter.  Elam Dep. 252:21-25. Further, it is absurd for Defendants to seek from Plaintiff the contact information for the Witnesses; such information is accessible to Defendants.  *See* FED. R. CIV. P. 26(b) (weighing the "parties' relative access to relevant information" when determining whether information is within the scope of discovery).

Finally, with respect to both Witnesses, Plaintiff did, in fact, inform Defendants about the declaration and anticipated testimony, on February 28, 2017—nearly two months before trial. As such, this case is distinguishable from *Serin v. Northern Leasing Systems, Inc.*, No. 7:06 Civ. 1625, 2010 WL 6501661 (S.D.N.Y. Oct. 26, 2010) (unreported), as there, defendant's counsel failed to disclose the witness until 15 days *after* the case was originally scheduled for trial.  Even after two continuances, defendant's counsel made the disclosure only 20 days before trial.

Even if the Court finds a violation of Rule 26, it must, before excluding evidence, consider: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.  *Patterson*, 440 F.3d at 117.  Here, first, Plaintiff's counsel believed that

Defendants' counsel was aware of the Witnesses.  Second, the evidence is important: the Witnesses' testimony is the only uninterested testimony Plaintiff has to put before the jury in support of his pretext theory, as well as the only vehicle by which he could enter into evidence that the Board disagreed with the decision to terminate him, if the Witnesses' statements are hearsay.  Third, Defendants have not articulated any prejudice; they merely state that rules allegedly were broken, and there is nothing preventing them from interviewing the Witnesses (in fact, Defendants' counsel claims to represent them).  Finally, there is the possibility of a continuance, as neither party has sought a continuance of this trial.

Accordingly, neither Meyers's declaration nor Hendricks's testimony should be excluded from trial.

## CONCLUSION

For the reasons set forth above, this Court should deny Defendants' Motion in its entirety. Defendants have not demonstrated that the Witnesses were parties or represented in the matter, let alone that Plaintiff's counsel knew that they were when the Witnesses contacted him. Therefore, Rule 4.2(a) was not violated. Further, Defendants have not shown that Meyer's declaration should be excluded or that Hendricks should be prohibited from testifying.  As such, the Court should deny Defendants' motion in its entirety.

Dated: New York, New York
        March 20, 2017

By:   s/ Walker G. Harman, Jr.
        Walker G. Harman, Jr. [WH-8044]
        Edgar M. Rivera [ER-1378]
        THE HARMAN FIRM, LLP
        220 Fifth Avenue, Suite 900
        New York, New York, 10001
        212.425.2600
        wharman@theharmanfirm.com
        erivera@theharmanfirm.com
        *Attorneys for Plaintiff*

21